2005-NMCA-054

113 P.3d 377

**Marilyn and George LOPEZ, Plaintiffs–Appellants,**

v.

**Gopal REDDY, M.D., Defendant–Appellee.**

**No. 24,420.**

Court of Appeals of New Mexico.

March 30, 2005.

Kenneth R. Wagner, Thomas J. McBride, Wagner, McBride, Ford & Associates, P.A., Albuquerque, NM, for Appellants.

Robin A. Goble, Alice Tomlinson Lorenz, Miller Stratvert P.A., Albuquerque, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} In this case, we review whether the trial court abused its discretion in deciding that a medical expert, without expertise in surgical techniques, was not qualified to testify regarding the standard of care required for the surgical removal of tissue identified for biopsy. Plaintiffs appeal from the trial court's order excluding the testimony of their expert medical witness and granting summary judgment to Defendant in this medical

malpractice case. We affirm the trial court's ruling.

## I. BACKGROUND

{2} Plaintiff and her husband (Plaintiffs) filed a medical negligence suit against Defendant, who performed a biopsy of Plaintiff's breast; the alleged negligence was his failure to remove all of the tissue identified by the radiologist as suspicious and subject to biopsy. The issue is whether the failure to remove all of the identified tissue was malpractice.

### A. Negligence Claim

{3} In September 1998, Plaintiff was experiencing a problem associated with her right breast. She was referred for a mammogram by her primary-care physician. Based on the results of the mammogram, additional tests were performed, which identified suspicious tissue in the breast. Plaintiff consulted with Defendant, a general and vascular surgeon, who recommended surgery. On October 27, 1998, radiology tests identified the location of the suspicious tissue, and Defendant performed the surgery. In March 1999, Plaintiff developed the same symptom and returned for additional imaging studies. In comparing Plaintiff's imaging studies performed before surgery to those done after surgery, the radiologist stated that "it was clear that the same filling defect and the same mass I had seen prior to surgery [were] still there." The radiologist also informed Plaintiff that it was "possible that the lesion was missed." Plaintiff then consulted Dr. Sylvia Ramos, who performed surgery on Plaintiff and used a different technique for identifying the tissue that needed to be removed. Additional pertinent facts are set out in our discussion of the issues.

### B. Procedural History

{4} Plaintiffs filed suit against Defendant with five claims: battery, medical negligence, breach of contract, negligent misrepresentation, and loss of consortium. By the date specified in the pretrial scheduling order, Plaintiffs had not identified an expert witness to testify on their behalf, and Defendant subsequently filed a motion for summary judgment. In response, Plaintiffs requested additional time to obtain new counsel to represent them and moved for a continuance.

{5} At Plaintiffs' continuance hearing, they identified Dr. Barry Singer as their medical expert witness and submitted an affidavit from Dr. Singer, which is not in the record. At that time, Defendant withdrew his motion for summary judgment. Following the deposition of Dr. Singer, Defendant filed a motion with two parts: first, Defendant moved to exclude Dr. Singer's testimony; and second, Defendant moved for summary judgment. Defendant argued that Dr. Singer was not qualified to provide testimony on the relevant standard of care and causation under Rule 11–702 NMRA; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); and *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993). With Dr. Singer's testimony excluded, Defendant asserted that Plaintiffs were unable to establish the essential elements of their claims and that Defendant was therefore entitled to judgment as a matter of law. Plaintiff responded with a memorandum in opposition and another affidavit from Dr. Singer.

{6} At the motion hearing, the trial court placed the burden on Defendant to produce an affidavit from a surgeon asserting that only a surgeon could address the issues in this matter and that Dr. Singer, a non-surgeon, would therefore not be qualified to testify as to the standard of care. The court denied Defendant's motion because he had not produced such an affidavit.

{7} Subsequently, Defendant submitted a motion for reconsideration with a supporting affidavit from his expert, Dr. Leo Gordon, which stated that the applicable standard of care involved surgical technique and that Plaintiffs' expert was not qualified in this area. Plaintiffs responded with an additional affidavit from Dr. Singer. After reviewing the affidavits and other material, the trial court concluded that Dr. Singer was not qualified to provide testimony on the decisions that were made during the surgical procedure in this case. Accordingly, the trial court granted Defendant's motion and dis-

missed the case with prejudice. Plaintiffs now appeal.

## II. DISCUSSION

{8} Plaintiffs appeal on the ground that the trial court erred in holding that Dr. Singer was not qualified to testify and that summary judgment was therefore improper. In support of their argument, Plaintiffs assert that contrary to existing New Mexico law, the trial court held Dr. Singer to a higher standard by applying the *Daubert* and *Alberico* evidentiary standard to his testimony. Specifically, Plaintiffs maintain the following: (1) Dr. Singer was qualified to testify in this matter, (2) Defendant's evidence was insufficient to disqualify Dr. Singer, and (3) the public policy effect of the trial court's decision would act as a disincentive for patients to file malpractice suits against doctors. We address these arguments in turn.

### A. Admissibility of Expert Testimony

{9} The testimony of a medical expert is generally required when a physician's standard of care is being challenged in a medical negligence case. *Lopez v. Southwest Cmty. Health Servs.*, 114 N.M. 2, 7, 833 P.2d 1183, 1188 (Ct.App.1992) (holding that "[i]n a medical malpractice case, because of the technical and specialized subject matter, expert medical testimony is usually required to establish departure from recognized standards in the community"). The trial court in this case concluded that expert testimony was necessary, and neither party disagrees with that determination. Thus, the exclusion of Dr. Singer's testimony, as Plaintiffs' only medical expert, precludes Plaintiffs' cause of action.

{10} Admission or exclusion of a medical expert's testimony is governed by Rule 11–702, which is as follows:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Rule 11–702 "makes witness qualifications a question for the trial court." *Baerwald v. Flores*, 1997–NMCA–002, ¶ 8, 122 N.M. 679, 930 P.2d 816. Plaintiffs argue that the trial court could only have reached its decision to exclude Dr. Singer's testimony by requiring him to possess specialized qualifications, in addition to his medical license, and that this requirement is contrary to New Mexico law. Plaintiffs assert that this heightened standard was a result of the trial court's incorrect application of the *Daubert* and *Alberico* standard to this case. While we agree that *Alberico* must be utilized in certain cases where there is a Rule 11–702 question, the trial court in this instance correctly applied Rule 11–702 without employing the *Alberico* analysis. We explain below.

{11} In 1993, the United States Supreme Court adopted new standards related to the validity and reliability of scientific testimony. *Daubert*, 509 U.S. at 594–95, 113 S.Ct. 2786. The New Mexico Supreme Court immediately adopted a similar approach in *Alberico*. 116 N.M. at 158, 166–68, 861 P.2d at 194, 202–04. *Alberico* clarified that Rule 11–702 establishes three prerequisites for admission of expert testimony: (1) the expert must be qualified, (2) the scientific evidence must assist the trier of fact, and (3) the expert may only testify to "scientific, technical or other specialized knowledge." *Id.* at 166, 861 P.2d at 202 (internal quotation marks and citation omitted). In *Alberico*, the experts' qualifications were not at issue; therefore, *Alberico* only addressed the second and third elements of Rule 11–702, dealing with scientific evidence. *Alberico*, 116 N.M. at 166, 861 P.2d at 202. The *Alberico* case established "evidentiary reliability as the hallmark for the admissibility of scientific knowledge," and outlined factors to consider when evaluating such testimony. *State v. Torres*, 1999–NMSC–010, ¶¶ 24–26, 29, 127 N.M. 20, 976 P.2d 20.

{12} Subsequently, a number of New Mexico cases have addressed the application of the *Alberico* standard when the reliability of scientific methods was at issue. *See, e.g., State v. Stills*, 1998–NMSC–009, ¶¶ 24–27, 125 N.M. 66, 957 P.2d 51 (explaining the third element for a specific method of DNA analysis); *State v. Anderson*, 118 N.M. 284,

291–92, 296–301, 881 P.2d 29, 36–37, 41–46 (1994) (addressing the second and third elements as related to DNA evidence). The reliability of scientific methods, however, was not at issue in this case. Here, the question before the trial court was whether Dr. Singer was qualified to testify on the given subject matter. *Alberico* does not address this element of Rule 11–702; accordingly, whether the trial court erred in applying *Alberico* evidentiary standards to this medical negligence case is not an issue that is necessary for this Court to reach in rendering a decision. Additionally, while Defendant argued below and on appeal that the *Alberico* standard for admissibility of expert testimony applies to Dr. Singer's testimony, there is no evidence in the record that the trial court utilized the *Alberico* standard in reaching the decision. In fact, as discussed in the following section and contrary to Plaintiffs' argument, it would have been unnecessary for the trial court to apply *Alberico* in order to reach a decision that Dr. Singer was not qualified to testify on the standard of care in this case.

{13} In a related argument, Plaintiffs urge this Court to extend the reasoning in *Banks* and *Fuyat* as a bar to the application of *Daubert* and *Alberico* in this case. *Banks v. IMC Kalium Carlsbad Potash Co.*, 2003–NMSC–026, ¶ 1, 134 N.M. 421, 77 P.3d 1014 (holding that *"Daubert/Alberico* does not apply to the testimony of a health care provider" under the Workers' Compensation Act); *Fuyat v. Los Alamos Nat'l Lab.*, 112 N.M. 102, 105–06, 811 P.2d 1313, 1316–17 (Ct.App. 1991) (rejecting the argument that in a workers' compensation case, physicians' testimony was required to demonstrate general acceptance of the scientific techniques employed). As we have stated, *Alberico* is inapplicable to the issue at hand. Additionally, *Banks* and *Fuyat* are workers' compensation cases, in which the use of experts is subject to particular statutory standards; therefore, we decline to rely on these cases, as their holdings are limited to a different type of case from the one before us. *Banks*, 2003–NMSC–026, ¶ 1, 134 N.M. 421, 77 P.3d 1014; *Fuyat*, 112 N.M. at 104–05, 811 P.2d at 1315–16.

## B. Exclusion of Dr. Singer's Testimony

{14} It is widely recognized that Federal Rule of Evidence 702 and its New Mexico analogue, Rule 11–702, impose a "gate-keeping" function on a trial court judge as to the admissibility of an expert's opinion. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.2001) (internal quotation marks and citation omitted); *Baerwald*, 1997–NMCA–002, ¶ 17, 122 N.M. 679, 930 P.2d 816. In determining whether an expert witness is competent or qualified to testify, "[t]he trial court has wide discretion . . ., and the court's determination of this question will not be disturbed on appeal, unless there has been an abuse of this discretion." *Wood v. Citizens Standard Life Ins. Co.*, 82 N.M. 271, 273, 480 P.2d 161, 163 (1971). The ruling "will not be disturbed . . . [,] unless [it] is manifestly wrong or the trial court has applied wrong legal standards in the determination." *Dahl v. Turner*, 80 N.M. 564, 568, 458 P.2d 816, 820 (Ct.App. 1969) (internal quotation marks and citation omitted). We therefore review the trial court's decision to exclude Dr. Singer's testimony under an abuse of discretion standard.

{15} Under Rule 11–702, "a witness must qualify as an expert in the field for which his or her testimony is offered before such testimony is admissible." *Torres*, 1999–NMSC–010, ¶ 45, 127 N.M. 20, 976 P.2d 20. In most cases, this means that the "calling party must qualify the witness to testify as an expert first, before any substantive testimony is given." *Id.* (internal quotation marks and citation omitted).

{16} The qualifications of an expert are dependent on the type of negligence claimed and the medical complexity involved. We detail the claims and evidence regarding the surgeries in this case. Plaintiffs assert that Defendant failed to remove two papillomas or two intraductal masses that were indicated by the radiology tests. Indeed, after reviewing the radiology films for Plaintiff, Defendant's preoperative diagnosis was a "[n]onpalpable calcified lesion, upper outer quadrant of the right breast, along with another retro-areolar lesion, probably consistent with adenoma of the duct." In other words, the radiology films indicated the pres-

ence of two lesions or masses. After the surgery, the pathology report on the removed tissue indicated that no lesions were found and provided a postoperative diagnosis of fibrosis, scattered microcalcifications, adenosis, benign lymph node, fibrocystic change, and chronic lobular and periductal mastitis. Similarly, pre- and postoperative diagnoses by Dr. Ramos, related to the second surgery, were "[r]ight breast intraductal papillomas." The pathology report on the tissue removed by Dr. Ramos, in pertinent part, diagnosed the tissue as "[b]enign ductal epithelial hyperplasia" with "organizing fat necrosis, fibrosis and old hemorrhage." No papillomas were found by the pathologist in the second tissue sample.

{17} In both surgical cases, the radiology reports and the surgeon's diagnoses indicated abnormal tissue. Both surgeons removed tissue, but subsequent pathology reports found that the tissue did not contain the masses indicated by the radiology reports. According to the deposition testimony of Dr. Ramos, a discrepancy between what is suspected and what is found occurs in her practice approximately one percent of the time. In deposition testimony, Dr. Singer acknowledged that the pathology reports from both surgeries did not show discrete papillomas, which had been indicated by the radiology tests. Because Plaintiffs assert that Defendant failed to remove all of the tissue that made the biopsy necessary, i.e., the two papillomas, an expert would need to address the relationship between the radiology reports and the surgical decision on the amount and location of tissue to be removed, as well as the significance of the disparity between the radiology and pathology reports.

{18} Dr. Singer presented his qualifications and the basis of his opinion to the trial court in his affidavits; further, parts of his deposition testimony were available to the court as exhibits to the motions. In the affidavits, Dr. Singer clearly stated that he was not commenting on the surgical technique employed by Defendant. We summarize Dr. Singer's description of his qualifications and rationale as follows:

(1) He is a medical doctor licensed to practice in Pennsylvania and having been in practice since 1968.

(2) He has medical privileges in internal medicine, hematology, and oncology.

(3) Although he does not perform surgery, he reviews the results of surgical procedures done by surgeons on his cancer patients.

(4) He maintains that he is "perfectly capable of determining whether a surgeon has in fact removed all of the tissue which was meant to be removed during the surgery."

(5) He previously performed biopsies, during his residency training under the supervision of surgeons.

(6) These surgeons instructed that unless there was some reason why it was either imprudent or impossible, all of the tissue that made the biopsy necessary should be removed; in the present case, the records did not indicate that it would be imprudent or impossible.

(7) In arriving at his opinion of Defendant's breach of the standard of care, Dr. Singer reviewed the medical records in the case from before and after both surgeries, as well as the deposition testimony of Dr. Ramos, which supports Dr. Singer's conclusion.

Based on the foregoing, Dr. Singer opined that Defendant's failure to remove all of the tissue identified by the radiology report breached the standard of care.

{19} Plaintiffs contend that under New Mexico law, Dr. Singer is qualified to testify on the issues in this case, even though he is not a specialist in the same field as Defendant. As support for this proposition, Plaintiffs cite to *Sewell v. Wilson,* 97 N.M. 523, 641 P.2d 1070 (Ct.App.1982), a medical negligence case, in which this Court stated that "[w]here expert testimony is required, the mere fact that a medical witness is not a specialist goes to the weight, not to admissibility, of the witness'[s] expert testimony." *Id.* at 528, 641 P.2d at 1075. However, the pertinent holding in that case was that "a non-specialist can testify as to the standards of care owed by a defendant specialist, *but only if the non-specialist is qualified and*

*competent to do so." Id.* (emphasis added). In that case, we reiterated the requirement in Rule 11–702 that an expert witness must be qualified to testify by "knowledge, skill, training or education" and must be "able to testify as to how and why he arrives at an opinion that a defendant physician's conduct has been substandard." *Id.*

{20} Similarly, Plaintiffs cite to *Blauwkamp v. University of New Mexico Hospital,* 114 N.M. 228, 233, 836 P.2d 1249, 1254 (Ct. App.1992), where this Court concluded that the plaintiffs were not required to produce an expert who was a specialist in the identical field of practice as the defendants in order to withstand a summary judgment motion. Contrary to Plaintiffs' assertion, however, *Blauwkamp* does not stand for the proposition that a court may never require that a proposed expert have specific expertise. *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.04[2], at 702–58 (2d ed.2004) (stating that "[i]n some instances, it will be appropriate for the trial court to insist that a proposed expert witness have specific expertise before allowing him or her to testify"); *Ralston* 275 F.3d at 969–70 (upholding a lower court finding that the expert, a board-certified orthopedic surgeon, was not qualified to testify about intramedullary nailing, since she had no familiarity with the field of intramedullary nailing).

{21} Additionally, the case at hand is distinguishable from *Blauwkamp* by the differences in the qualifications of the *Blauwkamp* expert as compared to those presented by Dr. Singer. In *Blauwkamp,* the issue was alleged medical negligence during pregnancy and at the birth of the plaintiffs' brain-damaged child. 114 N.M. at 229, 836 P.2d at 1250. The expert provided an affidavit showing that he received doctoral degrees in pharmacy and medicine, had served as an extern and a resident in obstetrics and gynecology, maintained a private practice in obstetrics and gynecology, and served on the medical faculty of a few schools of medicine. *Id.* at 234, 836 P.2d at 1255. This Court found that the doctor had "extensive experience in obstetrics and family practice" and that the affidavit was "sufficient to establish a prima facie showing of the doctor's qualifications." *Id.*

{22} In the present case, the trial court evaluated Dr. Singer's qualifications and found them wanting. Our review is based on an abuse of discretion standard. While we agree that Dr. Singer's qualifications would allow him to testify on a number of subjects, we find no abuse of discretion in determining that he lacked the qualifications to testify as to the standard of care applicable to Defendant in performing the breast biopsy in this case.

{23} Dr. Singer's experience with biopsies was based on his residency more than thirty years ago. His training concerning the standard of care for biopsies is therefore three decades old. Defendant presented evidence that medical science and surgical techniques have changed since that time. Dr. Singer presented no evidence showing that he has kept up with these advances or that advances in the area of biopsies had not subsequently changed that standard of care. His expertise is in internal medicine, hematology, and oncology, and his review of surgical procedures is limited to those performed by surgeons on his cancer patients. Plaintiff was not a cancer patient, and there was no evidence that the tissue removed was cancerous.

{24} At oral argument, Plaintiffs' counsel acknowledged that a trial court could view this case in two ways: (1) as a surgical technique case or (2) as a case where Defendant did not finish the job. Plaintiffs' counsel also acknowledged that the question of whether it was imprudent or impossible to remove certain tissue is one that is decided by the surgeon, based on his or her judgment, and that if the case is characterized as dealing with surgical techniques or methods, an expert in surgical techniques would be necessary. However, Plaintiffs' counsel urged this Court to consider the case as analogous to one where the doctor only cut off half of a leg, instead of the entire leg. The trial court viewed this case as a surgical technique case, and we agree with that view. Admission of this expert testimony was left to the discretion of the trial court, and having reviewed the record, we find no abuse in the exercise of that discretion.

## C. Summary Judgment

{25} "Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Hagen v. Faherty,* 2003–NMCA–060, ¶ 6, 133 N.M. 605, 66 P.3d 974. Such a legal question is reviewed de novo. *Id.* We view the facts in the light most favorable to the party opposing summary judgment, *Gonzalez v. Gonzalez,* 103 N.M. 157, 164, 703 P.2d 934, 941 (Ct.App.1985), and draw all inferences in favor of that party. *Baer v. Regents of Univ. of Cal.,* 118 N.M. 685, 687–88, 884 P.2d 841, 843–44 (Ct.App.1994).

{26} Defendant's motion for summary judgment included an affidavit from Dr. Gordon, a board certified surgeon who performs breast biopsies; the affidavit stated that Defendant was within the standard of care in his treatment of Plaintiff. As discussed above, Plaintiffs' expert was not qualified to offer testimony to rebut this showing; therefore, no issue of material fact was in dispute, and summary judgment was proper. *See Blauwkamp,* 114 N.M. at 232, 836 P.2d at 1253 (stating that summary judgment in a medical malpractice case is appropriate when the " 'nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim' " (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Cervantes v. Forbis,* 73 N.M. 445, 449, 389 P.2d 210, 213 (1964) (upholding summary judgment in the absence of expert testimony as to how a defendant surgeon's conduct fell below the standard of care because there could be no genuine issue of material fact), *modified on other grounds by Pharmaseal Labs., Inc. v. Goffe,* 90 N.M. 753, 757, 568 P.2d 589, 593 (1977).

## D. Public Policy Concerns

{27} In their reply brief, Plaintiffs argued for the first time that if the trial court decision is upheld, we will be undertaking de facto tort reform by requiring that "an expert [be] identical in every way to the [d]efendant" in a medical malpractice case. They contend that this will make it more difficult to prosecute those claims. Plaintiffs repeated this argument at oral argument. Although we need not consider arguments made for the first time in a reply brief, *State v. Castillo–Sanchez,* 1999–NMCA–085, ¶ 20, 127 N.M. 540, 984 P.2d 787 (stating that an appellate court will not consider arguments raised for the first time in a reply brief), we believe Plaintiffs' fears are unwarranted. Each malpractice case turns on its own facts. Our holding does not mandate a certain type of expert in every malpractice case; on the contrary, we are making no changes to the requirement that the trial court continue to act as a gatekeeper and determine if the particular expert tendered has the qualifications to testify in the particular case, as set forth in Rule 11–702. Absent an abuse of discretion, the trial court's determination will stand. As explained above, this is the state of the law in New Mexico currently. *Blauwkamp,* 114 N.M. at 234, 836 P.2d at 1255; *Sewell,* 97 N.M. at 527, 641 P.2d at 1074.

## III. CONCLUSION

{28} For the foregoing reasons, we affirm the trial court's ruling.

{29} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.