**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                                                          **No. 28,830**

**DAWN BEAULIEU,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Corey J. Thompson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant appeals from her conviction for driving while under the influence of drugs, contrary to NMSA 1978, Section 66-8-102(B) (2008). In this Court's notice of proposed summary disposition, we proposed to affirm. Pursuant to several extensions granted by this Court, Defendant has timely responded with a

memorandum in opposition in which she continues to argue for reversal pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985). We have considered Defendant's arguments, and we are not persuaded by them. We affirm.

**Detective Harmer's Testimony Was Sufficiently Reliable Under the *Daubert/Alberico* Standard**

Defendant contends that the district court erred in accepting the findings of Detective Mike Harmer of the Clovis Police Department, who testified as a drug recognition expert. [DS 3-4] The evidence about which Defendant complains is that Detective Harmer testified that he "performed a battery of medical examinations on [Defendant]," he "made [Defendant] stand in a dark room alone with him and guess how much time had passed," and "asked [Defendant] what drugs she had taken." [DS 3] It appears that Detective Harmer also testified that during the testing process, he concluded that Defendant was "under the influence of a drug." [RP 59]

In our notice of proposed summary disposition, we stated that we did not believe we needed to decide whether Detective Harmer's testimony regarding his conclusion that Defendant was impaired by drugs was scientific testimony subject to the *Daubert/Alberico* reliability standard, because we proposed to conclude that even if the district court's admission of this evidence was in error, the error was harmless.

"Error in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Clark v. State*, 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991). To determine whether the admission of evidence was harmless, this Court examines (1) whether substantial evidence exists to support the conviction when the improperly admitted evidence is not considered; (2) whether there is a disproportionate volume of permissible evidence such that "in comparison, the amount of improper evidence will appear so minuscule that it could not have contributed to the conviction"; and (3) whether there is substantial conflicting evidence to discredit the State's permissible testimony. *See State v. Barragan*, 2001-NMCA-086, ¶ 19, 131 N.M. 281, 34 P.3d 1157.

In our notice of proposed summary disposition, we proposed to hold that there was substantial evidence to support Defendant's conviction even without Detective Harmer's testimony, that there was a disproportionate volume of permissible evidence supporting Defendant's conviction, and that there was no substantial conflicting evidence to discredit the State's permissible testimony. The State was required to prove that (1) Defendant operated a motor vehicle and (2) that when she did so, she was under the influence of drugs such that she could not safely drive. [RP 63] The

jury was instructed that even if a person is not actually driving, she is operating a motor vehicle if she is "in actual physical control" of the vehicle. [RP 64]

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). In our notice of proposed summary disposition, we stated that there was substantial evidence that Defendant operated a motor vehicle because there was circumstantial evidence that Defendant was in actual physical control of the vehicle—she was found in the driver's seat of a vehicle parked against the flow of traffic on a public road, with other passengers in the car. [DS 2; RP 54-56] Although Officer Richard Johnson of the Clovis Police Department apparently testified that he did not observe the keys in the vehicle [DS 3], we find no requirement in our case law that the State present evidence as to the location of the keys in a particular case. While we do have cases that discuss the location of the keys, we believe that this is because the location of the keys was introduced into evidence in those cases, not because the introduction of evidence of the location of the keys is a requirement for conviction. *See State v. Sims*, 2008-NMCA-017, ¶¶ 7, 9, 143 N.M. 400, 176 P.3d 1132 (listing cases in which there was evidence that the keys were in the ignition and

4

discussing the relevance of evidence in that case that the defendant's keys were on the passenger's seat). Here, the fact that Defendant was in the driver's seat of a car that was registered to her or a family member, that was parked on a roadway against the flow of traffic, and that still had passengers in it, was substantial circumstantial evidence that Defendant either had just driven the vehicle or was in a position to "exercise direct influence over the vehicle" as defined in our case law. *See id.* ¶ 9. Accordingly, regardless of the absence of any testimony about the location of the keys, we proposed to conclude that there was substantial evidence to support a conclusion that Defendant was in actual physical control of the vehicle.

We also proposed to conclude that there was substantial evidence that Defendant was impaired by drugs to such a degree that she could not safely drive. Officer Christopher Lopez testified that after he asked Defendant to step out of the vehicle, she was swaying from side to side, had difficulty maintaining her balance, and had a slow reaction time in responding to questions. [RP 55] Officer Lopez also testified that Defendant was unable to complete the field sobriety tests as instructed. [RP 55] This testimony provides substantial evidence that Defendant was impaired to such a degree that she could not safely drive. Evidence that Defendant's impairment was caused by drugs came in the form of Defendant's statement to Officer

5

Lopez that she had taken seventeen Xanax pills [RP 56], evidence that a sample of Defendant's blood contained Xanax and Benadryl [RP 51-53], and expert testimony by Dr. Jen Hwang, the bureau chief of the New Mexico Department of Health toxicology lab, that the levels of these drugs in Defendant's system were consistent with the physical symptoms she exhibited in her encounter with the police. [RP 53]

Defendant has responded in her memorandum in opposition that there was insufficient evidence to support her conviction in this case. [MIO 10-11] Defendant apparently believes that her conviction was based on improper speculation and conjecture. [MIO 11] However, we believe that the State presented sufficient facts from which a jury could appropriately infer that Defendant was in actual control of a vehicle while under the influence of drugs. As a jury is permitted to draw reasonable inferences from the evidence presented, we hold that there was sufficient evidence to support the conviction. *See State v. Martinez*, 2002-NMCA-043, ¶ 13, 132 N.M. 101, 45 P.3d 41 (reviewing the evidence to determine "whether a rational jury could have drawn reasonable inferences" from the evidence to conclude that the defendant was driving under the influence of alcohol); *see also State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 ("The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a

verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." (internal quotation marks and citation omitted)).

In our notice of proposed summary disposition, we proposed to conclude that the evidence offered by the State was so overwhelming that any scientific expert testimony given by Detective Harmer could not have contributed to the conviction. Some of the testimony that Detective Harmer gave appears to have been about field sobriety tests he gave her [RP 58], and this testimony is not scientific evidence. *See State v. Torres*, 1999-NMSC-010, ¶ 31, 127 N.M. 20, 976 P.2d 20 (indicating that "most of the field sobriety tests are self-explanatory," as they allow an officer to better observe "common physical manifestations of intoxication"). Detective Harmer's testimony about the medical tests he gave Defendant appears to have been primarily directed toward explaining why he thought the impairment he observed in Defendant was the result of drugs such that he was justified in ordering a blood test. [RP 58-59] Any testimony about these tests or about his conclusion that Defendant was impaired by drugs was minuscule in light of the testimony regarding Defendant's own statement about the amount of Xanax she had taken, the blood test, the field sobriety tests, the other observable evidence of impairment, and the expert testimony offered by Dr. Hwang. As Defendant offered no evidence that would contradict the State's

evidence, we proposed to conclude that any error in the admission of any scientific testimony by Detective Harmer was harmless.

Defendant does not respond to our harmless error analysis in her memorandum in opposition, and as her arguments do not otherwise persuade us, we hold that any error in the admission of Detective Harmer's testimony was harmless.

**Detective Harmer Was Qualified as an Expert in Drug Recognition**

Defendant contends that Detective Harmer should not have been permitted to testify as a medical professional. [DS 4] However, the district court designated Detective Harmer as an expert in "drug recognition," not as a medical professional. [RP 58] Therefore, we look to whether the district court erred in concluding that Detective Harmer was qualified as an expert in drug recognition. "In determining whether an expert witness is competent or qualified to testify, [t]he trial court has wide discretion . . ., and the court's determination of this question will not be disturbed on appeal, unless there has been an abuse of this discretion." *Lopez v. Reddy*, 2005-NMCA-054, ¶ 14, 137 N.M. 554, 113 P.3d 377 (alterations in original) (internal quotation marks and citation omitted). A district court's ruling that an expert is qualified "will not be disturbed . . .[,] unless [it] is manifestly wrong or the trial court

has applied wrong legal standards in the determination." *Id.* (alterations in original) (internal quotation marks and citation omitted).

In this Court's notice of proposed summary disposition, we proposed to hold that the district court did not abuse its discretion in this case. Detective Harmer testified that he is certified as a drug recognition expert, that he had over two thousand hours of training, and that he had had both classroom education and on-the-job training in evaluating whether a person is under the influence of drugs. [RP 58] We proposed to conclude that this evidence was sufficient for the district court to determine that Detective Harmer was qualified. We noted that the question of whether the substance of any scientific testimony he may have offered was sufficiently reliable is an issue distinct from the question of Detective Harmer's qualifications and that it therefore did not affect our proposed conclusion that the district court did not abuse its discretion in finding Detective Harmer to be qualified to testify about the administration of the tests or the conclusions he reached based on his administration of the tests. *See Torres*, 1999-NMSC-010, ¶ 47 (holding that even if an expert cannot testify as to the scientific basis of certain tests, he may be qualified by education and training to administer them and would therefore be qualified to testify about the administration of the tests in a particular case). Detective Harmer did not attempt to

testify about the scientific reliability of any of the tests he performed, and we therefore are not faced with the question of whether the district court erred in qualifying him as an expert about the scientific validity of those tests.

In Defendant's memorandum in opposition, she seems to conflate the issue of Detective Harmer's qualifications with the question of whether the methods he used to draw his conclusions were scientifically reliable. [MIO 5-6] To the degree that Defendant challenges the admission of scientific evidence that was not reliable, we have already held that any error in the admission of this testimony was harmless. As Defendant does not otherwise challenge our proposed conclusion that Detective Harmer was qualified as an expert in the subject matter about which he testified, we now hold that the district court did not abuse its discretion in determining that he was qualified as an expert.

**The Sufficiency of the Evidence**

Defendant contends that there was insufficient evidence to support her conviction because she was not observed actually driving and because there was no testimony about the location of the car keys. [DS 4] We have already resolved this question in our discussion of Issue 1 and we hold that substantial evidence supports Defendant's conviction.

**Evidence of the Outstanding Arrest Warrant**

Defendant argues that she was unfairly prejudiced by the fact that the State introduced evidence that Defendant was initially approached by the police because of an outstanding warrant unrelated to this case. [DS 4] At trial, the State called Officer Johnson to the stand. Officer Johnson stated that he was looking for Defendant because there was an active warrant for her arrest. [RP 54] It does not appear that he testified about the reason the warrant had been issued. Defendant objected to Officer Johnson's statement and apparently requested a mistrial. [RP 54] The district court shared Defendant's concern that this information might prejudice the jury, since the judge indicated in a bench conference that this information should not have come before the jury, and then instructed the jury not to make any assumptions about the warrant and not to "hold [the warrant] against Defendant." [RP 54] In our notice of proposed summary disposition, we proposed to conclude that the admission of this evidence was harmless in light of the curative instruction given by the district court and in light of the overwhelming evidence discussed in Issue 1 supporting Defendant's conviction. *See State v. Gutierrez*, 2007-NMSC-033, ¶ 23, 142 N.M. 1, 162 P.3d 156 (noting that a curative instruction may be considered in determining whether an error was harmless).

11

Defendant again asserts that the introduction of this evidence warrants reversal of her conviction. [MIO 11-12] As she has presented no new facts or arguments that would persuade this Court that its initial proposal was in error, we hold that the district court did not abuse its discretion in failing to grant a mistrial because the admission of this evidence did not prejudice Defendant. *See State v. McDonald*, 1998-NMSC-034, ¶ 26, 126 N.M. 44, 966 P.2d 752 (reviewing the denial of a mistrial for an abuse of discretion).

Therefore, for the reasons stated in this opinion and in our notice of proposed summary disposition, we affirm Defendant's conviction.

**IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____
**CELIA FOY CASTILLO, Judge**


_____
**ROBERT E. ROBLES, Judge**