This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37155**

**JOHN P. WILCOX,**

Plaintiff-Appellant,

v.

**GEO GROUP, INC. and CORIZON, LLC,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

John P. Wilcox
Los Lunas, NM

Pro Se Appellant

YLAW, P.C.
Megan L. Kuhlmann
Albuquerque, NM

for Appellee GEO Group, Inc.

Allen Law Firm, LLC
Michelle Lalley Blake
Albuquerque, NM

for Appellee Corizon, LLC

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Plaintiff John P. Wilcox, an inmate of the New Mexico Department of Corrections (NMCD), acting pro se, brought a suit for damages resulting from what he purports to be medical negligence and cruel and unusual punishment, sustained at the Lea County

Correctional Facility (LCCF). His initial complaint alleged negligence claims against Defendants GEO Group, Inc. (GEO) and Corizon, LLC (Corizon) under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2020), and violations of his Eighth Amendment rights. Plaintiff later moved to amend his complaint multiple times, requesting to amend negligence claims and to add claims of contract violations and due process violations. Plaintiff's claims were dismissed on motions for summary judgment. He now appeals, and we affirm.

## BACKGROUND

{2}     NMCD contracted with Lea County to house inmates, including Plaintiff, at LCCF, which then contracted with GEO as a private prison operator. NMCD separately contracted with Corizon to provide medical services to inmates. Plaintiff was incarcerated at LCCF when the events at issue occurred in July 2013. Plaintiff brought this lawsuit in district court, alleging that he contracted a staph infection that progressed into cellulitis—a bacterial skin infection—while housed at LCCF. Plaintiff asserted that due to a lack of prompt medical treatment in July 2013, the condition went unaddressed for eleven days.

{3}     This case's procedural history spans a period of three years. Plaintiff filed his initial complaint in May 2014. Plaintiff indicated that he was seeking damages for "Eighth Amendment violation of deliberate indifference, cruel and unusual punishment, not providing prompt medical treatment for a known medical condition, pain, suffering, negligence, contraction of an infectious bacterial disease [sic]." GEO filed a motion for summary judgment in October 2014, claiming that both the Eighth Amendment and negligence claims failed as a matter of law. Three years later, in August 2017, Corizon filed a motion for summary judgment. During those interim three years, the parties engaged in several months of motions practice. Plaintiff moved for leave to file an amended complaint—at least two separate times—seeking to add additional negligence, breach of contract, and due process claims. Plaintiff struggled to properly comply with the Rules of Civil Procedure, as evidenced by his mistakes and duplicative filings of motions but was given consideration by the district court due to his status as a pro se plaintiff. Plaintiff also filed many motions related to discovery, to have an attorney appointed to him, and motions related to seeking expert testimony. In December 2017, the district court ordered GEO to provide a list of all such motions, so that it could address all outstanding motions. The list GEO produced included over fifteen motions that were ripe for decision by the district court. The district court issued written decisions on all pending motions, including orders granting GEO and Corizon's motions for summary judgment, and denying Plaintiff's motion to file an amended complaint. The district court also denied Plaintiff's discovery requests as well as his request for appointment of an expert witness at the state's expense. In Plaintiff's notice of appeal, he lists eleven orders he appeals but does not list the order denying his motion to file an amended complaint.

## DISCUSSION

**{4}**     We understand Plaintiff to make three arguments on appeal: (1) the district court erred in granting summary judgment on the Eighth Amendment claim; (2) the district court erred in granting summary judgment on the negligence claim; and (3) the district court abused its discretion when it denied Plaintiff's requests regarding the appointment of an expert witness.[1]

## I.     Standard of Review

**{5}**     Plaintiff argues the district court erred in granting Defendants' motions for summary judgment. "An appeal from the grant of a motion for summary judgment presents a question of law that we review de novo." *Griffin v. Penn*, 2009-NMCA-066, ¶ 7, 146 N.M. 610, 213 P.3d 514 (internal quotation marks and citation omitted). "Summary judgment is appropriate if no genuine issues of material fact exist, [and] the movant is entitled to judgment as a matter of law." *Gardner-Zemke Co. v. State*, 1990-NMSC-034, ¶ 11, 109 N.M. 729, 790 P.2d 1010. "We review the record in the light most favorable to support a trial on the merits, and we construe all reasonable inferences from the record in favor of the party that opposed summary judgment." *Griffin*, 2009-NMCA-066, ¶ 7 (internal quotation marks and citations omitted). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. "A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citation omitted).

## II.     Plaintiff Did Not Did Not Establish a Prima Facie Case That Defendants Violated His Eighth Amendment Right

## A.     Summary Judgment Was Properly Granted for GEO

---

[1]While we understand Plaintiff to make the above three arguments, to the extent Plaintiff's arguments on appeal bear upon a due process and a contracts claim, we note that these claims were raised only through Plaintiff's motion to amend his complaint. Because Plaintiff never filed his first amended complaint despite receiving leave of court to do so, and the district court ultimately denied Plaintiff's later motion to amend his complaint, and those arguments were therefore never brought within the original complaint, those claims are not the subject of either of the motions for summary judgment granted by the district court. Plaintiff also raised discovery claims however they were asserted in an unclear manner without proper authority. Although we review Plaintiff's pro se notice of appeal with a tolerant eye, *see Bruce v. Lester*, 1999-NMCA-051, ¶ 4, 127 N.M. 301, 980 P.2d 84, his arguments are undeveloped, unclear, and without authority from which we can determine whether the challenged conduct constitutes actionable discovery claims. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. Finally, Plaintiff asserts that the district court was obligated to hold hearings for summary judgement motions, discovery motions, and his motion to strike Corizon expert's affidavit. Contrary to Plaintiff's assertions, hearings are often not required for the district court to determine discovery and summary judgment issues. *See Nat'l Excess Ins. Co. v. Bingham*, 1987-NMCA-109, ¶ 9, 106 N.M. 325, 742 P.2d 537 ("In considering a motion for summary judgment, the court may, but is not required to, hold an oral hearing."). Therefore, we decline to address this argument further.

**{6}** Plaintiff alleged GEO violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment. He claims it was cruel and unusual for him to be exposed to conditions that allowed for him to contract a contagious infection. The district court concluded that Plaintiff failed to make any showing that: (1) a GEO employee violated the Eighth Amendment; (2) "a GEO policy or custom was the moving force behind the constitutional deprivation"; or (3) that "a GEO employee acted with deliberate indifference to Plaintiff's medical needs as required to prove a claim under the Eighth Amendment."[2] We affirm.

**{7}** "[I]n order to state a cognizable claim that he has been denied adequate medical treatment in violation of the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Griffin*, 2009-NMCA-066, ¶ 9 (internal quotation marks and citation omitted). Plaintiffs may demonstrate actionable indifference "by the response of prison doctors to a prisoner's needs or by the acts of guards intentionally denying or delaying access to proper medical care." *Archuleta v. Goldman*, 1987-NMCA-049, ¶ 5, 107 N.M. 547, 761 P.2d 425. The deliberate indifference standard includes an objective component and a subjective component. *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 30, 136 N.M. 217, 96 P.3d 778. "To satisfy the objective component of the deliberate indifference test and demonstrate a cognizable violation of the Eighth Amendment, [the p]laintiff must demonstrate an injury that is sufficiently serious." *Griffin*, 2009-NMCA-066, ¶9 (internal quotation marks and citation omitted). "The subjective component requires a showing that an officer acted with a sufficiently culpable mental state." *Id.* "Thus, indications that an inmate has a serious need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (internal quotation marks and citation omitted).

**{8}** Plaintiff does not assert that he was denied medical treatment, rather he alleges that his treatment was delayed. Moreover, he does not complain about the adequacy of the medical treatment once he received it. His argument focuses on the assertion that the delay caused additional harm to him as a result of the cellulitis spreading from one leg to both legs.[3]

**{9}** "In cases where treatment was delayed rather than denied altogether, the inmate must allege facts showing he suffered substantial harm as a result of the delay." *Id.* ¶ 11 (internal quotation marks and citation omitted). "The substantial harm or objective element of this test is satisfied by a showing that a delay in treatment resulted in lifelong handicap, permanent loss, or considerable pain, and the deliberate indifference or the

---

2Plaintiff does not assert that any one particular GEO employee acted with deliberate indifference to his medical needs on appeal.

3Plaintiff seemingly argues that the spread of the staph infection makes the condition chronic; however, he also notes that he was previously treated for cellulitis, which is supported by the record before this Court. Corizon however notes that after treatment, Plaintiff transferred facilities without any symptoms of cellulitis. Plaintiff does not assert that the cellulitis returned post treatment.

subjective element is satisfied by facts indicating that prison officials were aware of facts from which they could infer that the delay would cause a substantial risk of serious harm and did, in fact, draw that inference." *Id.* (internal quotation marks and citation omitted).

**{10}**    Plaintiff has not produced evidence of the objective or subjective components in order to withstand a dismissal under a motion for summary judgment. Plaintiff did not assert facts indicating that he suffered a lifelong handicap, permanent loss, or considerable pain. The only assertion he makes is that his condition *could have* led to further complications including death. Therefore, Plaintiff does not offer evidence that satisfies the objective component requiring that the pain or deprivation create substantial harm.

**{11}**    As to the subjective component, Plaintiff does not point to any facts that indicate prison officials were aware of any risk to Plaintiff. The record shows that Plaintiff was transported to medical services multiple times by the correctional officers after he put in requests to be seen by medical staff. Plaintiff does not allege GEO was deliberately indifferent to his medical needs; rather, he points to GEO to imply that the actions or inactions of GEO actually caused his medical condition. Plaintiff implicates GEO's responsibility for his medical condition by suggesting multiple theories as to how or why he contracted the infection. In district court, he initially speculated that he contracted the staph infection due to an insect bite that occurred because GEO did not properly spray pesticide. He later asserted he contracted the infection from another inmate who possibly had a staph infection after getting a tattoo in the facility, and thus blames GEO for not employing practices that would have isolated inmates with contagious infections. However, on appeal, Plaintiff maintains that he contracted the staph infection while cleaning the showers without being provided proper protective equipment and sanitation products, while again asserting that GEO failed to separate prisoners with a contagious illness. Plaintiff has not, however, supported these allegations by reference to evidence in the record, and has thus not met his burden to demonstrate a disputed issue of material fact regarding these allegations or, more generally, his conclusion that GEO's actions constituted deliberate indifference to Plaintiff's medical needs. Because Plaintiff has not pointed to any evidence showing that GEO officials were aware of a sufficiently serious injury, or that they were aware that a delay in his treatment would cause serious harm, we affirm the district court's order granting summary judgment for GEO.

### B.    Summary Judgment Was Properly Granted for Corizon

**{12}**    Plaintiff alleges that Corizon's delay in treatment caused the staph infection in one leg to spread to an infection in both legs, which he claims was a substantial harm and a violation of his Eighth Amendment Rights. Because Plaintiff does not contend that he was not provided medical treatment, or that the medical treatment he received was inadequate, we limit our analysis to the contention that the delay of medical care constitutes a cognizable claim under the Eighth Amendment.

**{13}**    Here, Corizon provided the affidavit of Jose G. Andrade-Barraza, M.D., indicating that Plaintiff did in fact receive multiple medical visits in July 2013. The affidavit included

a synopsis of medical treatments received by Plaintiff, not only during July 2013, but also throughout the duration of his commitment at LCCF. The multiple visits and treatments for the cellulitis had been occurring for at least one year prior to July 2013. The medical synopsis relevant to this bout of cellulitis indicates that Plaintiff began submitting "health service request form[s]" on July 7, 2013, noting that he had "fever/chills/rash on leg again" and "teeth missing from dentures." Plaintiff again submitted health service request forms on July 8 and July 9, noting he had "cellulitis symptoms." The affidavit indicates that Plaintiff was seen three days after his initial request—on July 10, 2013—when a "nursing encounter tool" recorded that his right leg had redness and was warm and that he had other symptoms of itching and burning. The nursing encounter tool from July 10 indicated that Plaintiff reported he had no pain. Eight days later, on July 18, 2013, Plaintiff was then seen and treated for cellulitis on both legs.

**{14}** Plaintiff's only assertion is that his medical condition "*if* left untreated/undiagnosed *could* [have] cause[d] further complications including death." (Emphases added.) Despite the delay in treatment, there is nothing in the record to indicate that the spread of cellulitis caused a significant injury or substantial harm. Plaintiff's cellulitis cleared upon treatment, and he has not pointed to a lifelong handicap or permanent loss. *See Griffin*, 2009-NMCA-066, ¶ 11. "It is well established that when a prisoner claims that a delay in receiving medical treatment amounts to inadequate medical care, he must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* ¶ 13. The district court ruled that Plaintiff had failed to do so, and thus failed to meet his burden of coming forward with objective evidence that the alleged delay in treatment resulted in a substantial harm. On appeal, Plaintiff has not pointed to any evidence in the record demonstrating a disputed issue of material fact on this point, and we therefore affirm the district court's finding that Plaintiff did not present specific supporting facts sufficient to create a genuine issue of material fact under the summary judgment standard.

### III. Plaintiff Did Not Demonstrate That Material Facts Concerning His Allegations of Defendants' Negligence Were in Dispute

**{15}** Having held that Defendants' actions did not rise to the level of an Eighth Amendment violation, we next consider whether the actions—or inactions— of Defendants rose to the level of medical negligence or medical malpractice.

**{16}** Plaintiff fails to articulate his negligence claims with precision, yet based on this Court's understanding of his arguments to the district court and to this Court, as well as summary judgment briefing for claims against Corizon, we understand that Plaintiff is claiming medical negligence. Accordingly, we analyze under traditional principles of negligence and medical negligence and under the standard of review for summary judgment motions set forth above.

### A. GEO Did Not Have a Duty to Provide Medical Care to Plaintiff

**{17}** "Negligence is generally a question of fact for the jury." *Schear v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 687 P.2d 728. However, a finding of negligence is dependent upon the existence of a duty on the defendant's part. *Id.* "Whether a duty exists is a question of law for the courts to decide." *Id.*

**{18}** We initially reject GEO's argument that Plaintiff did not preserve his claim that GEO was negligent in causing his underlying medical condition. GEO makes this assertion because, in Plaintiff's motion to amend his complaint, Plaintiff sought to add that GEO's "negligence was a contributing factor" based on GEO's failure to provide Plaintiff supplies and protection needed to prevent his contraction of a staph infection. GEO argues that since Plaintiff did not specifically name the order denying his motion to file an amended complaint in the notice of appeal, it was not preserved. We disagree with GEO, because Plaintiff's initial complaint—filed as a tort claim—clearly alleged negligence from the beginning of the case. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked."); *see also Lasen, Inc. v. Tadjikov*, 2020-NMCA-006, ¶ 15, 456 P.3d 1090 (providing the three purposes of the preservation rule), *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-37720, Jan. 7, 2020). GEO was named as a Defendant in the initial complaint, and GEO defended itself against a negligence claim in the district court proceedings, including its motion for summary judgment.

**{19}** The district court, in granting GEO's motion for summary judgment, concluded that GEO had no duty to provide a medical diagnosis and treatment to Plaintiff or any other inmate in the facility. The district court relied on GEO's evidence that LCCF contracted with GEO—a private prison contractor—to operate the facility, but that NMDC retained the responsibility for providing healthcare services to inmates. NMDC contracted with Corizon—a for-profit corporation—to provide medical care and services to inmates at LCCF. GEO maintained that its only duty was to "provide appropriate space and security support," and to escort inmates to and from the medical unit to be seen by medical providers.

**{20}** Plaintiff has not challenged the district court's legal conclusion on this point on appeal. Indeed, throughout his pleadings, Plaintiff asserts that it was Corizon who had the duty to treat his medical condition, and that Corizon had previously acknowledged the standard of care for cellulitis, not GEO. Accordingly, we affirm the district court's grant of summary judgment in favor of GEO on Plaintiff's negligence claim.

**B.    Plaintiff Did Not Demonstrate That Material Facts as to Corizon's Alleged Medical Negligence Were in Dispute**

**{21}** Finally, we review Plaintiff's claim that Corizon was medically negligent. "In order to prove medical malpractice, a plaintiff has the burden of showing that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty . . . ; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries." *Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 13, 114 N.M. 228, 836

P.2d 1249. "A defendant seeking summary judgment in a medical malpractice action bears the initial burden of negating at least one of the essential elements upon which the plaintiff's claims are grounded." *Id.* ¶ 14. "Once [the defendant makes] a prima facie showing of entitlement to summary judgment, the burden of proving the existence of genuine material factual issues shift[s] to [the plaintiff], requiring [the plaintiff] to come forward and show by affidavits or other means, admissible evidence indicating material facts tending to establish each required element of [the plaintiff's] claims." *Id.* ¶ 18.

{22}   Plaintiff alleged that Corizon was medically negligent because its staff failed to provide prompt treatment for a "known medical condition," which caused pain and suffering. Plaintiff asserts that because his condition was left untreated, it led to a worsening of the bacterial skin infection—namely that it spread from one leg to both legs.

{23}   In its motion for summary judgment, Corizon first asserted that expert testimony is necessary to establish the standard of care, and that Plaintiff had not established that aspect of his negligence claim. Corizon also provided evidence that its medical providers met or exceeded acceptable standards of care. Dr. Andrade-Barraza testified via an affidavit as part of Corizon's motion for summary judgment. Dr. Andrade-Barraza's affidavit indicated that he was a licensed physician in the State of New Mexico since 1998 and that he had extensive experience providing health care in a prison setting. His affidavit stated that he reviewed Plaintiff's medical chart from the date of his incarceration and indicated that Plaintiff had received at least seventy medical treatments. Dr. Andrade-Barraza stated that, based on his training and experience, Plaintiff possessed many of the risk factors for staph infection prior to his incarceration, naming multiple risk factors and Plaintiff's pre-existing conditions as putting him at greater risk for a staph infection. Dr. Andrade-Barraza opined that Corizon did not cause or contribute to Plaintiff's recurrent bouts of cellulitis and that Corizon's care not only met, but exceeded the applicable standard of care in the treatment of cellulitis.

{24}   A review of the record indicates that Plaintiff did not offer any competent evidence to rebut the testimony of Corizon's expert and thus failed to create a genuine issue of fact. Instead, Plaintiff responded with objections and arguments to each point raised in Corizon's motion for summary judgment but ultimately failed to introduce any evidence to support his claim of medical negligence. Therefore, we affirm the district court's order granting Corizon's motion for summary judgment on this issue.

### IV.   The District Court Did Not Abuse Its Discretion When It Denied Plaintiff's Motions Related to Expert Testimony

{25}   Plaintiff filed two motions regarding the use of expert testimony. First, Plaintiff asked the district court to allow him to present expert testimony on his own behalf. Second, Plaintiff asked the district court to appoint an expert witness for him. Both motions were denied on the same date that the district court granted Defendants' motions for summary judgment. We affirm the denial.

**{26}** Under New Mexico's Rules of Evidence, the district court functions as a "gate-keep[er]" as to the admissibility of an expert's opinion. *Lopez v. Reddy*, 2005-NMCA-054, ¶ 14, 137 N.M. 554, 113 P.3d 377. "In determining whether an expert witness is competent or qualified to testify, the [district] court has wide discretion, and the [district] court's determination of this question will not be disturbed on appeal, unless there has been an abuse of this discretion." *Id.* (alteration, omission, internal quotation marks, and citation omitted). Unless the ruling is manifestly wrong or the district court has applied the wrong legal standards in the determination, we will not disturb the ruling. *Id.*

**A.      The District Court Did Not Abuse Its Discretion by Not Appointing Plaintiff as His Own Expert**

**{27}** Plaintiff concedes that expert testimony is required in order for his case to survive summary judgment, but puts forth multiple arguments as to why no other person—besides himself—was needed to testify as an expert on his case. Plaintiff asserted that he should have been allowed to present expert testimony on his own behalf in part because case law supports the proposition that he should be allowed to serve as his own expert witness, and because contrary to Corizon's assumption, he does have some medical training. We are not persuaded by Plaintiff's arguments and address each in turn.

**{28}** Plaintiff argues that if an expert was needed in his case, he should have been able to stand as his own expert relying on *Helfferich v. Corrections Medical Services, Corizon*, No. 32,749, mem. op. (N.M. Ct. App. Dec. 9, 2013) (non-precedential). Plaintiff's reliance on *Helfferich* is misplaced. In *Helfferich*, a plaintiff brought a claim against Corizon, alleging dental-malpractice. *Id.* ¶ 2. The plaintiff claimed that Corizon failed to provide any treatment at all for over a year, while he was in pain and making consistent complaints of such pain and requesting treatment. *Id.* ¶ 5. This Court held that, "[i]n th[at] situation, a reasonable lay person could conclude that the pain [the p]laintiff suffered during the delay in treatment was proximately caused by th[e] delay, because earlier treatment of the cavities would have terminated [the p]laintiff's suffering at an earlier date." *Id.* ¶ 6. Based on those circumstances, this Court held that expert testimony was not needed because it was a "common-sense conclusion," similar to "the types of conclusions lay persons have been allowed to draw in other cases." *Id.* This case is not analogous to *Helfferich*, because in this case, Plaintiff went without the medical care of his preference for eleven days, not over a year. Further, cavities are more within the realm of common-sense—issues that lay people can draw conclusions about—while bacterial skin infections, including their cause and effect, are not necessarily so. *See id.*

**{29}** Plaintiff also asserts that he should have been allowed to stand as his own expert witness because he did have "some medical training contrary to . . . Defendant's statements and beliefs." It is well established under the New Mexico Rules of Evidence that "a witness must qualify as an expert in the field for which his or her testimony is offered before such testimony is admissible." *Lopez*, 2005-NMCA-054, ¶ 15 (internal quotation marks and citation omitted). "[A]n expert witness must be qualified to testify by

knowledge, skill, training, or education and must be able to testify as to how and why he arrives at an opinion that a defendant physician's conduct has been substandard." *Id.* ¶ 19 (internal quotation marks and citations omitted). Plaintiff concedes that he is not a licensed physician but asserts that through his work history and training, he was required to be certified in "CPR[;] hazmat[;] emergency rescues[;] blood borne pathogens[; Occupational Safety and Health Administration]; . . . Mine, Safety, Health Association[;] and mercury and asbestos handling and abatement." Despite Plaintiff's assertion that he had medical training, he failed to show that he was qualified and that he would provide testimony regarding "scientific, technical, or other specialized knowledge with a reliable basis." *State v. Consaul*, 2014-NMSC-030, ¶ 56, 332 P.3d 850 (internal quotation marks and citation omitted). Plaintiff was not qualified to offer expert testimony in opposition to the motion for summary judgment and Dr. Andrade-Barraza's testimony. We conclude that the district court did not abuse its discretion in denying Plaintiff to stand as his own expert.

## B.     The District Court Was Not Required to Appoint an Expert Witness to Plaintiff

**{30}**     Plaintiff contends the district court improperly denied his request to have an expert witness appointed to him, as an indigent plaintiff. Plaintiff suggests that the district court should have appointed him an expert witness to "avoid a wholly one-sided presentation of opinions on the issue," and points to *Steele v. Shah*, 87 F.3d 1266 (11th Cir. 1996), to support his assertion. We note that the court in *Steele* expressly disclaimed that its opinion did not "offer any opinion on the propriety of appointing an expert witness[.]" *Id.* at 1271. The case suggests only that if a decision is made regarding the appointment—or decision not to appoint—an expert witness, the court must demonstrate how it reached its decision in a reflected and reasoned ruling. *Id.*

**{31}**     Aside from *Steele*—case law that is not binding on this Court—Plaintiff fails to point to any New Mexico case law or legislation supporting his assertion that the courts should pay for expert witnesses on behalf of indigent plaintiffs. Although New Mexico has authorized its courts to provide certain resources at the public's expense for indigent defendants under the Indigent Defense Act, NMSA 1978, §§ 31-16-1 to -10 (1968), Plaintiff has not directed us to any statutory authority or appropriations where our courts may look for payment of expert witness fees for indigent plaintiffs in civil suits for damages. In the absence of any such cited authority, we assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482. We therefore affirm the district court's decision.

## CONCLUSION

**{32}**     We affirm.

**{33}     IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**