2008-NMSC-033

187 P.3d 162

**STATE of New Mexico, Plaintiff–
Petitioner and Cross–
Respondent,**

v.

**Peter LOHBERGER, Defendant–
Respondent and Cross–
Petitioner.**

No. 30,523.

Supreme Court of New Mexico.

May 28, 2008.

Gary K. King, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, NM, for Petitioner and Cross–Respondent.

The Chacon Law Firm, David M. Chacon, II, Albuquerque, NM, Henry A. Alaniz, Albuquerque, NM, for Respondent and Cross–Petitioner.

## OPINION

DANIELS, Justice.

{1} Over the past three years during the rocky history of this case, counsel for the parties and ten judges on four different courts have struggled in good faith with a threshold procedural issue: whether the metropolitan court effectively entered a final order of dismissal that started the clock running for the State to file a timely notice of appeal to the district court.

{2} The State requested the entry of a signed order of dismissal by the metropolitan court judge in order to start its appeal process. Defense counsel argued that the judge's unsigned but handwritten abbreviations on a chronological case history notes form had been a final order and that the State had not timely appealed from the making of those informal notes.

{3} The metropolitan court judge ultimately concluded that a clerk's computer-printed routing slip, and not the notes, constituted a final order for most purposes and that a party wishing to appeal had to make a specific and timely request for an appealable final order to be entered.

{4} The district judge disagreed with and reversed the metropolitan court, holding that neither the case notes nor the routing slip constituted an appealable final order of dismissal and that the State therefore had not forfeited its right to appeal by insisting on such an order.

{5} The Court of Appeals disagreed with and reversed the district court, holding that one or more of the judge's file notations, the routing slip, or a Motor Vehicle Division ("MVD") abstract of record reporting form in the court file constituted the functional equivalents of a final judgment and that the State therefore had forfeited its right to appeal by not filing its notice of appeal within 15 days from one of those events.

{6} We disagree with and reverse the Court of Appeals. We hope to put to rest the procedural uncertainty that has unduly consumed the time and attention of all concerned and that has prevented the resolution of the more substantive issues in the case.

In doing so, we reaffirm the long-standing requirement in New Mexico law that no appeal will lie from anything other than an actual written order or judgment signed by a judge and filed with the clerk of the court.

## I. PROCEDURAL HISTORY

{7} On October 18, 2004, Defendant Peter Lohberger was charged by criminal complaint in the Bernalillo County Metropolitan Court with the misdemeanor offenses of first-offense driving while under the influence and failure to maintain a traffic lane. After the State filed a notice of intent to call as prosecution witnesses the two police officers who had allegedly witnessed the incident, Albuquerque Police Department Officers Brian Werley and Eric Martinez, defense counsel requested discovery interviews with both police officers, pursuant to Rule 7–504(C) NMRA. At a pre-trial conference, the metropolitan court judge directed defense counsel to alert the court with a notice of noncompliance if the State did not produce the witnesses for the requested pre-trial interviews.

{8} At the first trial setting, on February 11, 2005, defense counsel moved to dismiss the case on the ground that Officer Martinez had not been made available to the defense for interview. The judge denied the motion to dismiss, again ordered the State to produce Officer Martinez for interview, and rescheduled the trial. Defense counsel then made further unsuccessful attempts to interview Officer Martinez.

{9} On the second scheduled trial date, March 11, 2005, defense counsel moved for a dismissal on the ground that the State still had not produced Officer Martinez for a defense interview. The judge again declined to dismiss the case, again rescheduled the trial, and explicitly warned that the case would be dismissed if the State did not arrange the interview with Officer Martinez. The judge noted these comments in the chronological "Case History" section of the "Case Notes" form in the court file. The State amended its witness list on March 18 by removing Officer Martinez as a State's witness. Ten days later, Officer Martinez failed again to appear for his scheduled defense interview.

{10} At the final trial setting, on April 4, defense counsel moved a third time to dismiss the case as a result of the failure of the State to secure the interview of Officer Martinez. Over the State's objection, the metropolitan court judge announced that he was granting the motion to dismiss for failure of the State to comply with the court's discovery order. The judge made the following handwritten notations in the "Case Notes" form: "[Date] 4–4–05 [Actions] SRFT D mtn to dismiss. PO Martinez FTA for PTI. Granted. [Initials] VEV." A clerk appears to have generated for the court file a computerized document titled "Routing Slip," which contains, in relevant part, the following blocks of printed information:

## *Charge(s):*

## DWI FIRST OFFENSE (Dismissed)

## DRIVING WITHIN TRAFFIC LANE (Dismissed)

*On the 4th day of April 2005, the court has ordered you to complete and/or*

*to pay the following:*

*SENTENCE:*                                    *FEES AND COSTS:*

P.O. Initials: LM

*INSTRUCTIONS/BONDS:*

Release Cash/Surety Bond $2000

*CONDITIONS/COMMENTS:*

*I have read the above and I understand if I fail to comply with any part of*

*this order, a WARRANT for my arrest will be issued and an ADDITIONAL*

*$100.00 ADMINISTRATIVE FEE will be assessed.*

_____          MKIE _____

*Signature of Defendant*                          *Court Clerk*

{11} The "Routing Slip" form does not contain any signature or handwritten entries of a judicial officer or anyone else. The court file also contains a copy of DWI cita-

tion form MVD10811, which incorporates a separate section titled "Abstract of Record." That abstract is a reporting form for the information that is required by statute to be compiled in all traffic cases and forwarded to the MVD. NMSA 1978, § 66–8–135 (1995). The abstract contains a recap of the case information, culminating in a dismissal on April 4, 2005, attests that it is a correct abstract of court actions, and has a rubber-stamped copy of the judge's signature. There is no indication that it was intended to be distributed to counsel of record or to any addressee other than the MVD.

{12} The State promptly filed a motion to reconsider the dismissal and subsequently filed a request for hearing on the motion to reconsider and for presentment of a proposed written order of dismissal. At a May 6 hearing, the court denied the motion to reconsider but did not address the State's requested order to dismiss.

{13} The metropolitan court judge wrote to counsel on June 7, stating that he had decided to "enter an appropriate order" of dismissal and requesting the parties to submit proposed forms of order. In defense counsel's June 13 cover letter to the court, enclosing a proposed form of dismissal order, defense counsel argued that a final order to dismiss had already been "filed" on April 4 when the judge made his handwritten notations in the "Case Notes" form in the court file. Accordingly, the defense argued, the State had already forfeited its right to appeal by not filing its notice of appeal within 15 days of those April 4 notations. Defense counsel also argued that since the Rule 7–506 NMRA six-month limit for taking a case to trial would have expired on May 5, a month after the first announcement of the decision to dismiss, the case could no longer proceed for that reason as well.

{14} At the June 22 presentment hearing, defense counsel argued to the court that it was the initialed "notations in the case file" and specifically "not the routing slip that generates" from the "order you enter in open court" that constituted a filed final order and that no further order of the court was necessary. Counsel for the State argued that neither the file notes nor the computer-gen-erated routing slip were the kind of operative final order from which an appeal could be taken. The metropolitan court judge disagreed in part with both parties. After first posing a question to the State as to whether the unsigned April 4 routing slip should be viewed as constituting the operative final order, the judge concluded the discussion by saying:

> This is going to be the order of the court.... I believe the State waived the request for any formal order when it didn't request it in a timely document, and I think that's the way this court needs to proceed because this court needs to be aware of when the State is intending to appeal or not ... so if the State is interested in appealing any issue of this court it needs to put us on notice that it wants an order.

Accordingly, the judge declined to sign either form of order prepared by counsel.

{15} On the following day, the State filed its notice of appeal to the district court appealing the metropolitan court's "oral orders" concerning the dismissal, the denial of the State's motion to reconsider the dismissal, and the decision not to sign and file with the clerk a written final order. Defendant then filed a motion in the district court to dismiss the appeal as untimely. The district judge determined that a proper final order still had not been filed in the metropolitan court, denied the defense motion to dismiss the appeal, and remanded to the metropolitan court for entry of a final order.

{16} After the metropolitan court judge entered a signed and file-stamped order of dismissal based on both the earlier discovery violation ruling and the running of the trial deadline after the court's announcement of its decision to dismiss, the parties came back before the district court for a hearing on the merits of the State's appeal and the defense's six-month rule arguments. The district judge held that the State's appeal was timely, rejected the defense argument that the six-month rule continued to run after the metropolitan court's announcement of dismissal, and remanded to the metropolitan court for an evidentiary hearing to determine whether the defense had been prejudiced by the lack

of access to any exculpatory information that could have been learned from Officer Martinez.

{17} Defendant then appealed the district court's decision to the Court of Appeals on all issues that had been argued in the district court. In a memorandum opinion, the Court of Appeals reversed the district court's reversal of the metropolitan court. *State v. Lohberger,* No. 26,616, slip op. at 12 (N.M. Ct.App. June 14, 2007). The opinion concluded that a final order in metropolitan court consists of varying combinations of the judge's handwritten "Case Notes," the computer-generated "Routing Slip," or the MVD "Abstract of Record" form. *Id.* at 6–7. The court therefore (1) concluded the State's appeal was barred as untimely, (2) determined it was unnecessary to reach any of the other issues in the case, (3) reversed the district court, and (4) affirmed the metropolitan court's dismissal of the charges. *Id.* at 12. The court found it unnecessary to reach the other appellate issues, which included the merits of the metropolitan court's dismissal, the remedial prejudice inquiry ordered by the district court, and the district court's rejection of the defense argument that the case became time-barred a month after the metropolitan court judge announced that he was dismissing the case without a trial. *Id.*

{18} The parties petitioned and cross-petitioned this Court for certiorari to review all issues. Since the issues we address involve interpretation of court rules and statutes, our standard of review is de novo. *Albuquerque Redi–Mix, Inc. v. Scottsdale Ins. Co.,* 2007–NMSC–051, ¶ 6, 142 N.M. 527, 168 P.3d 99.

## II. DISCUSSION

{19} Even a brief review of the confusion in this case underscores the practical wisdom of the long-standing requirement in New Mexico law that appealable final orders must meet defined requirements of certainty and finality. With narrow and well-defined exceptions, appellate court jurisdiction is limited to timely appeals from final judgments or orders that are properly filed of record with the lower court. *See State v. Ahasteen,* 1998–NMCA–158, ¶ 10, 126 N.M. 238, 968 P.2d 328. Both this Court and the

Court of Appeals have expressed this principle with consistent clarity. "[A]ppeals will lie only from a formal written order or judgment signed by the judge and filed in the case, or entered upon the records of the court and signed by the judge thereof." *Bouldin v. Bruce M. Bernard, Inc.,* 78 N.M. 188, 188–89, 429 P.2d 647, 647–48 (1967).

> It has long been the rule that, absent an express statute or rule, an appeal will not lie from anything other than a formal written order or judgment, signed by the judge and filed in the record in the case . . . . final judgment in a criminal case either adjudicates the defendant guilty and imposes, suspends, or defers sentence or dismisses the charges.

*State v. Durant,* 2000–NMCA–066, ¶ 5, 129 N.M. 345, 7 P.3d 495 (citations omitted).

{20} Informal expressions of a court's rulings are not appealable final orders or judgments. For example, a trial court's oral announcement of a result is not final, and parties to the case should have no reasonable expectation of its finality. *Bouldin,* 78 N.M. at 188–89, 429 P.2d at 647–48; *State v. Vaughn,* 2005–NMCA–076, ¶ 19, 137 N.M. 674, 114 P.3d 354. While not all written orders are final, all final orders must be written, must be formal, and must contain "decretal language." *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 37, 888 P.2d 475, 483 (Ct.App.1994) (stating that a court-filed letter announcing a decision did not constitute a final order or judgment, because "[t]o construe such a document as an order or judgment would destroy common expectations of the legal community and generate substantial confusion").

{21} The Court of Appeals, while acknowledging those general principles, expressed understandable concern in this case about the practical need for the high-caseload misdemeanor courts to operate with " 'a certain degree of informality.' " *Lohberger,* No. 26,-616, slip op. at 6 (quoting *State v. Sedillo,* 2001–NMCA–001, ¶ 1, 130 N.M. 98, 18 P.3d 1051). *Sedillo* held that a misdemeanor court judge's handwritten abbreviations on a complaint indicating that a defendant had previously entered a plea of guilty to DWI could be accepted as admissible evidence to

help the State prove that the defendant had a prior conviction. *Id.,* Because *Sedillo* involved only the issue of the admissibility of notes as evidentiary indicia of a court's action, instead of what is required for an appealable final order, it offers little assistance in determining the issue before us.

{22} There should be no uncertainty about just what document constitutes the official final judgment. That determination is not one that is expected to be litigated on a case-by-case basis. Although many informalities in making notations of interim orders and actions of a court can be accommodated in the interests of saving time, expediency cannot be allowed to override all other considerations in the administration of the law, particularly where important rights are in danger of being sacrificed. *See, e.g., State v. Brown,* 2006–NMSC–023, ¶ 28, 139 N.M. 466, 134 P.3d 753.

{23} Under Article VI, Section 27 of the New Mexico Constitution, the State has a constitutionally guaranteed right to appellate review of a final order of dismissal by the metropolitan court. *State v. Heinsen,* 2005–NMSC–035, ¶ 7, 138 N.M. 441, 121 P.3d 1040. This constitutional right of appellate review is reflected in the New Mexico statutes, NMS A 1978, § 34–8A–6 (1993), and in our Rules of Criminal Procedure for the Metropolitan Courts, Rule 7–703 NMRA. The rules specifically recognize the necessity of the filing of a written final order following the announcement of a decision, in order to initiate the constitutional right of appeal from the metropolitan court:

> The notice of appeal shall be filed in the district court within fifteen (15) days after the judgment or final order appealed from is filed in the metropolitan court clerk's office.... A notice of appeal filed after the announcement of a decision, or return of verdict, but before the judgment or order is filed in the metropolitan court clerk's office, shall be treated as timely filed.

Rule 7–703(A).

{24} The written order continues to play a significant role in processing an appeal. For example, within fifteen days after filing the notice of appeal, the appellant must file with the district court clerk a record on appeal that contains "a copy of the judgment or final order sought to be reviewed with date of filing." Rule 7–703(F)(3).

{25} The requirement of an unambiguous filed final order is important to the orderly administration of the law. This record demonstrates vividly how uncertainty about whether or when a final order has been filed may unintentionally forfeit a party's right to appellate review and may spawn otherwise unnecessary litigation over threshold procedural issues, while more important issues remain unresolved. In the efforts of counsel and the courts to determine just what might have constituted the appealable final order in this case, there was not only a difference of opinion among the various participants, there was uncertainty manifested at various times by most of those involved in the effort.

{26} Following the metropolitan court judge's announcement of his decision to dismiss, the State filed a motion on April 5, asking the court to reconsider the "order it issued on April 4, 2005, dismissing the above-captioned case," and then filed a request on April 15 for a hearing to present a proposed formal order of dismissal, taking the position that a final order of dismissal had not been entered up to that point.

{27} Among the varying interpretations articulated by defense counsel as to which unsigned and unstamped items constituted the operative appealable final order were (1) that it was the chronological case note abbreviations and specifically not the computerized routing slips, as expressed in written and oral representations to the metropolitan court, (2) that "the Court filed the *written* dismissal through its 'Routing Slip,'" as briefed to the district court in Defendant's Response to the State's Statement of Appellate Issues, (3) that it was the file notes and the routing slip that "individually or collectively" were the final order or orders, as stated in the Brief in Chief to the Court of Appeals, and (4) that the abbreviated file notes, the routing slip and, for the first time, the MVD abstract, were "in part or wholly" evidence of the final order, as stated in the Answer Brief to this Court.

{28} The metropolitan court judge similarly expressed uncertainty. Although the State's request for hearing on its motion for reconsideration also asked for a hearing on presentment of an order of dismissal, the first notice of setting was only for the reconsideration and did not acknowledge the additional request for a hearing on the form of order. Eleven days after the hearing at which the reconsideration motion was denied, the judge wrote to the parties and requested submission of proposed forms of dismissal orders, explaining that "[a]fter researching the issue of whether an order should be entered in dismissing the referenced case, the Court has decided to enter an appropriate order." At the subsequent presentment hearing, the judge expressed second thoughts about whether such an order was needed and suggested that "in most cases" the routing slip constituted the final order, at least in the absence of an appeal. He finally concluded that a party was not entitled to a formal appealable order unless it first notified the court that it was intending to appeal a decision.

{29} The opinion of the Court of Appeals also reflects ambiguity. At various points the opinion suggests (1) that the final appealable order was in the form of the judge's abbreviated notes on the case history form "indicating" dismissal of the charges; *Lohberger*, No. 26,616, slip op. at 10, (2) that the orders "were reflected by the judge's handwritten notations in the court file and/or by routing slips;" *id.* at 5, and (3) that the dismissal order was officially entered "in the form of the notation, the routing slip, and the abstract of record." *Id.* at 6.

{30} These inconsistencies and conflicts in trying to determine just what document or notation constituted the operative appealable written order underscore the importance of requiring a clearly recognizable final order that will serve its intended function as an avenue for appellate review of the issues in a case instead of a focus for additional litigation that serves no beneficial purpose.

{31} There are a number of good reasons why a litigant would not feel safe in relying on any of the notations or papers that have been argued at various times in this case to be the operative final order that determined the State's appellate rights. None contained any caption or decretal language indicating it was intended to be the appealable final order of dismissal. None were signed by a judge. None contained the clerk's dated file stamp, as do other pleadings in the metropolitan court file. None was called an "order." The chronological case history abbreviations in the "Case Notes" form were not signed, were not filed, and contained no language indicating any part of the form purported to be the final appealable order. The unsigned computer-generated "Routing Slip," while containing an undated parenthetical reference to a dismissal of charges, does not indicate that it serves as the final dismissal order nor does it contain any dismissal reference in any part that purports to be an order or that has a space in which decretal language arguably could go. The rubber-stamped MVD "Abstract of Record" form, containing a certified summary of the case history for MVD reporting purposes, does not purport to be a final dismissal order, which is perhaps why it was never discussed by any of the parties or courts before the Court of Appeals first suggested the abstract as additional evidence of a dismissal.

{32} While all of these items may have been evidentiary indicia of what the judge had intended to do or of what he might have said or reported on a given day, none of them constituted an actual appealable order. The fact that the Court of Appeals and counsel relied on one or more different combinations of the various indicia as evidence of the order demonstrates that not a single one of those indicia unambiguously constituted the one operative final order that determined the State's appeal rights.

{33} No New Mexico case has ever held that the kind of indicia relied on in this case would meet the definition of a final appealable order. In *Smith v. Love*, 101 N.M. 355, 683 P.2d 37 (1984), this Court specifically rejected similar arguments by a DWI defendant that the State had not perfected a timely appeal from an earlier unfiled metropolitan court dismissal. In *Smith*, the judge not only had orally announced his dismissal of the complaint, but he had actually signed a

standardized form of dismissal order that was clearly entitled "Final Order on Criminal Complaint." *Id.* at 355–56, 683 P.2d at 37–38. A month later, not having filed the first order, the judge signed and filed a more detailed dismissal order that was the basis of the State's notice of appeal. *Id.* This Court held that the first signed order was not the filed final order and did not start the clock for the State to appeal:

> This order was never filed, and as such was no more than an oral ruling by the judge. No appeal will lie from anything other than an actual written order or judgment signed by the judge and filed with the court. *State v. Morris*, 69 N.M. 89, 364 P.2d 348 (1961). Until the filing of the October 17, 1983 order, no final order was entered and the decision rendered by the judge on September 21, 1983 was merely evidence of what he had decided to do. Furthermore, the judge could have changed such a ruling anytime before the entry of the final judgment.

*Id.* at 356, 683 P.2d at 38.

{34} We are sympathetic to the practical needs created by extremely heavy caseloads in the busiest courts of this State. Our long-standing insistence that an appeal may be taken only from a written order or judgment signed by a judge and filed with the clerk of the court is not based on formalistic requirements. It is based on the very practical need for clarity in ascertaining exactly when a case has been disposed of, and by whom, and for what reason. There are some things that simply should not be left to the eye of the beholder. The rights of litigants and the integrity of our system of justice depend on a reasonable level of certainty in recording the final decisions of our courts.

{35} Our written final order requirement for all courts is not intended to be burdensome for any court. In most cases, there is no need for the court or the parties to prepare custom orders. A simple standardized final order, preprinted on stock forms or contained in a computer program, that can be signed by the judge and entered into the court file would take no more time to fill out than the file notations that were made in this case. *See, e.g.,* Form 9–414 NMRA. The Supreme Court-approved forms are replete with examples of simple and expedient order forms containing boxes that can be checked off over a space reserved for a judge's signature. Even a handwritten order that is identifiable as the operative order of dismissal and that is signed by the judge will suffice. It can be simpler and shorter than the brief "Order of Dismissal" finally signed in this case by the metropolitan court judge on remand from the district court. In three succinct sentences containing three different rulings, one of which was interlineated by hand, that order made clear that it was the operative document dismissing the complaint.

{36} In order for rules of law to be fair, it is important that the rules be knowable. The exercise of any party's constitutional rights, including the State's right to appeal a final dismissal of its case, should not depend on the uncertain outcome of a guessing game. Proper resolution of appellate issues on their merits is important not only to the litigants in a particular case, it is important to the reasoned development of the law as a whole.

{37} The State was within its rights in insisting on a proper final order upon which to base its right of appeal. We conclude that a final appealable dismissal order as required by New Mexico law was not signed by the metropolitan court judge and filed with the clerk of the court until after the State filed its precautionary notice of appeal. The State's appeal therefore should not have been dismissed as untimely.

## III. CONCLUSION

{38} We reverse the Court of Appeals on the issue of the timeliness of the State's appeal from the metropolitan court and remand for consideration of the remaining unaddressed appellate issues.

{39} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.