**Certiorari Denied, September 20, 2013, No. 34,297**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-100**

**Filing Date:  July 17, 2013**

**Docket No. 30,294**

**PETER J. HOLZEM, as Personal Representative for the
WRONGFUL DEATH ESTATE OF DOUGLAS R. REID, deceased,
and CHRISTAL REID, individually and as guardian and next friend
of Darian Reed, a Minor,**

       **Plaintiffs-Appellants,**

**v.**

**PRESBYTERIAN HEALTHCARE SERVICES
and JOSEPH HELAK, D.O.,**

       **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Sheri A. Raphaelson, District Judge**

John R. Polk Law Offices
John R. Polk
Albuquerque, NM

David A. Archuleta
Albuquerque, NM

for Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Jocelyn Drennan
Albuquerque, NM

for Appellees

**OPINION**

1

**HANISEE, Judge.**

**{1}**     Peter Holzem, the personal representative of Douglas Reid's estate, and Christal Reid, Douglas Reid's wife, (collectively, Plaintiffs) brought suit against Presbyterian Healthcare Services and Dr. Joseph Helak (Defendants), seeking damages for the wrongful death of Reid, under theories of medical negligence, respondeat superior, and corporate negligence.  The district court granted summary judgment in favor of Defendants based on its conclusion that Plaintiffs lacked competent, admissible expert testimony to support the elements of duty and negligence with regard to Dr. Helak and to prove that Defendants' actions or inactions proximately caused or contributed to cause Reid's death.  Plaintiffs appeal, asserting that genuine issues of material fact exist to preclude summary judgment, and contending that the district court abused its discretion in excluding both expert testimony and a medical study supporting Plaintiffs' theory of the case.  Because the district court abused its discretion in excluding the testimony of Plaintiffs' proposed expert, Darwin Palmer, M.D., we reverse and remand.

**I.     BACKGROUND**

**{2}**     Reid, a thirty-four-year-old man, first developed influenza symptoms on either January 2 or 3, 2005.  On January 4, he sought treatment at an urgent care center and was subsequently sent to an emergency room at Plains Regional Medical Center, both of which were owned by Defendant Presbyterian Healthcare Services.  Dr. Helak treated Reid at the emergency room where Reid presented with symptoms consistent with influenza or gastroenteritis.  Dr. Helak did not test Reid for influenza.  Rather, Dr. Helak provided Reid with palliative treatment, addressing Reid's symptoms, but not determining the underlying cause of his illness.  Reid was subsequently sent home from the hospital.

**{3}**     On January 5, Reid's condition deteriorated, and he was seen by his primary care physician, Albert Kwan, M.D., who admitted him as a patient into Plains Regional Medical Center.  Reid died there in the intensive care unit at 8:15 a.m. the following day.  The autopsy report, issued on February 7, 2005, concluded that the cause of death was myocarditis (inflammation of the heart) due to an Influenza B infection.

**{4}**     Plaintiffs subsequently brought this wrongful death action against Defendants.  During the course of the case, Plaintiffs produced evidence from a medical expert, Dr. Palmer, who attested to breaches of the standard of care owed by Dr. Helak and the hospital's nursing staff.  The theory of Plaintiffs' case was that Dr. Helak "failed to perform a differential diagnosis" when Reid initially presented in the emergency room and "failed to use an available . . . test for influenza."  Plaintiffs asserted that the "differential diagnosis is [a] standard practice in emergency rooms in New Mexico[,] medication is available to treat influenza along with other courses of action[, and that] Reid died of undiagnosed and untreated influenza."  Plaintiffs concluded that "Defendants failed to possess and apply the knowledge and use the skill and care owed to [Reid] and, as the proximate result of the negligence of Defendants, [Reid] died."

**{5}** We note that Plaintiffs initiated their case on the primary theory that the negligent medical action involved the failure to make a differential diagnosis. Yet the district court identified the material issue to be Plaintiffs' ensuing contention that Dr. Helak should have given Reid Tamiflu, a drug used to prevent replication of the influenza virus, despite Defendants' assertion that Reid had been symptomatic for about fifty hours upon arrival at the emergency room. The district court explained:

> If it is true that the negligence in this case is only the failure to make a differential diagnosis[,] then . . . Plaintiff[]s would fail to be able to show that omission caused the death. Clearly, the allegation of . . . Plaintiff[s] is that if [Reid] had been given Tamiflu when he was seen in the emergency department he would have lived. It is that omission, the failure to give Tamiflu, that . . . Plaintiff[s are] necessarily saying caused the death.

We agree with the district court's understanding of the nature of the claim asserted by Plaintiffs. In fact, to support their contention that a differential diagnosis would have improved Reid's chances of recovery and survival, Plaintiffs relied on Dr. Palmer's statement that it would have been medically appropriate for Reid to have been given the antiviral drug, Tamiflu, had the differential diagnosis been made. In his deposition, Dr. Palmer indicated that he was qualified to testify on this topic because he was an infectious disease specialist, who taught about and specialized in treating infectious diseases for twenty-nine years at the University of New Mexico Medical School. The courses he taught included instruction on the diagnosis and treatment of influenza.

**{6}** After extensive discovery in which Defendants deposed Plaintiffs' experts, Defendants contemporaneously sought summary judgment and exclusion of testimony by Dr. Palmer. In their motion for summary judgment, which incorporated their separate motion to exclude opinion testimony by Dr. Palmer, Defendants argued that Plaintiffs failed to provide competent, admissible evidence to establish Dr. Helak's breach of the standard of care or Defendants' causation of Reid's injuries and death. Defendants maintained that "Plaintiffs rely upon only one expert, Dr. Palmer, to express opinions on the standard of care applicable to Dr. Helak [and] . . . whether Dr. Helak breached that standard." Defendants also asserted that Dr. Palmer was unqualified to express opinions as to either breach or causation because he "does not possess adequate training or experience in emergency medicine," and because he "has no practical experience with Tamiflu, and has not otherwise reviewed or researched . . . this drug[.]"

**{7}** In his January 2009 deposition, Dr. Palmer stated that he had not practiced emergency medicine for nearly fifty years and had never specialized in emergency medicine. As well, Defendant produced evidence showing that Tamiflu was not available for prescription until 1999 at the earliest, approximately four years after Dr. Palmer retired from practicing medicine. We note that although Dr. Palmer was licensed to practice medicine at the time of his 2009 deposition, he testified that he had not worked or had privileges at any hospital since 1995 and that he had never provided medical care as a private practitioner.

3

Dr. Palmer testified at his deposition that he could not recall practicing medicine between 1997 and 2004.

**{8}** Dr. Palmer further stated when deposed he had not reviewed any literature regarding Tamiflu in preparation for his deposition and that he did not plan to refer to medical research, literature, or studies of any kind when he testified at trial. Dr. Palmer also conceded that he was not aware of any studies published before 2005 that addressed the effectiveness of Tamiflu administered in excess of forty hours following the onset of symptoms. Following Dr. Palmer's deposition, Plaintiffs attempted to amend the testimony he provided by submitting a six-page witness correction sheet signed by Dr. Palmer, but upon Defendants' motion, the district court struck the document from the record.

**{9}** Plaintiffs opposed summary judgment, arguing that Dr. Palmer indeed possessed sufficient experience in emergency medicine, influenza diagnosis, and the administration of Tamiflu. Attached to their response to Defendants' motion for summary judgment, Plaintiffs submitted, among other exhibits, two supplementary affidavits from Dr. Palmer. In the first affidavit, Palmer attested to his qualifications and opinion about causation in Reid's case. In the second affidavit, labeled the "Special Affidavit" by Plaintiffs, Dr. Palmer provided new information about his post-retirement medical practice in Zimbabwe and in a health clinic in Albuquerque. In the Special Affidavit, he stated that "[s]hortly after his retirement he spent two years teaching infectious disease, urgent care[,] and emergency medicine at the University of Zimbabwe Medical School, . . . which involved a plethora of infectious diseases including all forms of influenza."

**{10}** The Special Affidavit also avowed that from 1998 through 2002, Dr. Palmer practiced medicine two days per week in the Healthcare for the Homeless Clinic, where he treated patients with various stages of influenza infections. Dr. Palmer attested that "[t]his experience started before the modern antiviral treatments for influenza became available and continued through the introduction of Tamiflu[,] giving him a close observation of the effectiveness of this antiviral drug which he prescribed regularly." The Special Affidavit stated that during his time at the clinic, Dr. Palmer treated hundreds, if not thousands, of influenza patients, and "was able to carefully observe Tamiflu's effectiveness based on the time of its administration from the onset of symptoms." The Special Affidavit asserted that "[b]ased on his personal experience in diagnosing, observing, treating[,] and following influenza patients in the many hundreds, if not thousands, he is thoroughly familiar with this infectious disease, its consequences, and the effectiveness of the various treatments that have been administer[ed] for it over the years."

**{11}** Defendants subsequently brought motions to strike both affidavits, arguing that they were "sham" affidavits and that "Dr. Palmer should be bound by his deposition testimony, not by a self-serving and contradictory affidavit served after the conclusion of discovery." Defendants contended that the Special Affidavit qualified as a "sham" because this additional work experience was not identified on Dr. Palmer's curriculum vitae produced during discovery and because it contradicted his deposition testimony that he did not practice

4

medicine between 1997 and 2004. Plaintiffs responded that the Special Affidavit was meant to supplement Dr. Palmer's deposition testimony and that Defendants had previously agreed to post-deposition supplementation of discovery. The district court did not rule on either motion to strike the post-deposition affidavits.

{12}    Nonetheless, the district court excluded the testimony of Dr. Palmer, concluding that he was not "qualified to render opinions o[n] the standard of care in the field of emergency medicine, including diagnosis and treatment." It appears from the court's order that this decision was based primarily on the court's finding that "[e]mergency [m]edicine is a specialized field of medicine in which Dr. Palmer has never been certified, never received specialized education, nor ever practiced." Although argued by Defendants as a ground for exclusion, the court did not note Dr. Palmer's experience or inexperience with Tamiflu in its decision to exclude his testimony. The district court then granted summary judgment in favor of Defendants, stating that based on its *Daubert* analysis, it agreed with Defendants that

> (1) Plaintiffs do not have competent, admissible expert testimony to support the elements of duty and negligence against [Defendant], and (2) Plaintiffs also do not have competent, admissible expert testimony to support their claim that alleged negligence on the part of the Defendants proximately caused or contributed to cause the death of Douglas Reid and resulting harm to . . . Plaintiffs.

*See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Plaintiffs now appeal.

## II.    DISCUSSION

{13}    At the heart of the summary judgment motion was Plaintiffs' purported lack of evidence to support the elements of duty, breach of duty, and causation, that is, whether Reid would have had a better chance of survival had the proper standard of care been adhered to by Dr. Helak. Specifically at issue is whether Dr. Helak should have performed a differential diagnosis and then administered Tamiflu to Reid. "The testimony of a medical expert is generally required when a physician's standard of care is being challenged in a medical negligence case." *Lopez v. Reddy*, 2005-NMCA-054, ¶ 9, 137 N.M. 554, 113 P.3d 377. Here, a medical expert was required to testify regarding the standard of care applicable to the diagnosis and treatment of influenza, an infectious disease. Once the district court excluded testimony by Dr. Palmer, Plaintiffs' only proposed expert witness to prove these core elements of a negligence cause of action, the court concluded that summary judgment was necessitated. Plaintiffs assert that it was error to exclude Dr. Palmer's testimony and grant summary judgment on the basis identified by the district court.

**A.      Dr. Palmer's Absence of Expertise in Emergency Medicine Was Not a Proper Basis to Disqualify Him As an Expert**

**{14}** "With respect to the admission or exclusion of evidence, we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, but we apply a de novo standard to review any interpretations of law underlying the evidentiary ruling." *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341. "In determining whether an expert witness is competent or qualified to testify, [t]he [district] court has wide discretion . . . , and the court's determination of this question will not be disturbed on appeal, unless there has been an abuse of this discretion." *Lopez*, 2005-NMCA-054, ¶ 14 (alterations in the original) (internal quotation marks and citation omitted). Nonetheless, with regard to the admission of scientific evidence,

> [a]n abuse of discretion . . . can be found when the trial judge's action was obviously erroneous, arbitrary, or unwarranted. . . . An abuse of discretion standard of review . . . is not tantamount to rubber-stamping the trial judge's decision. It should not prevent an appellate court from conducting a meaningful analysis of the admission [of] scientific testimony to ensure that the trial judge's decision was in accordance with the Rules of Evidence and the evidence in the case.

*State v. Alberico*, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993).

**{15}** Rule 11-702 NMRA states that "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[, a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify [thereto] in the form of an opinion or otherwise." Under Rule 11-702, the trial court must determine whether an expert witness is or is not qualified to testify and give an opinion about the particular issue. *Lopez*, 2005-NMCA-054, ¶ 14. The medical expert has the task of testifying "as to how and why he arrives at an opinion that a defendant physician's conduct has been substandard." *Sewell v. Wilson*, 97 N.M. 523, 528, 641 P.2d 1070, 1075 (Ct. App. 1982). Thus, "[t]he qualifications of an expert are dependent on the type of negligence claimed and the medical complexity involved." *Lopez*, 2005-NMCA-054, ¶ 16. We note that "a non-specialist can testify as to the standards of care owed by a defendant specialist, but only if the non-specialist is qualified and competent to do so." *Wilson*, 97 N.M. at 528, 641 P.2d at 1075. "[T]he mere fact that a medical witness is not a specialist goes to the weight, not to admissibility, of the witness'[s] expert testimony." *Id.*

**{16}** At issue in this case is whether Dr. Palmer possessed the knowledge, skill, training, or education to be qualified and competent to testify about whether Reid would have had a better chance at survival had Dr. Helak adhered to the applicable standard of care. More specifically, based upon Plaintiffs' theory of the case, Dr. Palmer must have been qualified to testify about the standard practice for administering Tamiflu, as well as the likelihood that Tamiflu would have saved Reid's life. Here, the district court determined that Dr. Palmer was unqualified to testify because he lacked experience and expertise in emergency medicine, yet it neglected to incorporate into its ruling consideration of Dr. Palmer's many

6

years of experience in infectious disease treatment or to consider the information separately asserted by way of post-deposition affidavits or even to rule upon Defendants' motions that the affidavits be stricken.

**{17}** Initially, we conclude that the district court erred in basing its exclusion on the exclusive rationale the district court identified, as we reason that Dr. Palmer's lack of expertise in emergency medicine does not alone establish a permissible ground for disqualification as an expert under the circumstance of this case. At issue, generally, is the standard of care for treating influenza. Evidence indicates that Dr. Palmer was an infectious disease specialist who taught about and specialized in treating infectious diseases for twenty-nine years at the University of New Mexico Medical School. The courses he taught to medical students included instruction on the diagnosis and treatment of influenza. Not as a specialist in emergency medicine but as a specialist in infectious disease, Dr. Palmer's background afforded him experience and expertise in diagnosing and treating influenza. The standard for diagnosing and treating influenza is not particular to emergency medicine, and cannot be construed on such a narrow basis. Plaintiffs' influenza-related claim should be addressed by an expert who has sufficient experience in both influenza diagnosis and treatment that is pertinent to the facts of this case. Accordingly, Dr. Palmer's lack of specialization in emergency medicine does not automatically disqualify him as an expert witness. Rather, it goes to the weight a jury could give his testimony if determined otherwise to be admissible. The district court therefore abused its discretion by determining that Dr. Palmer was not qualified as an expert on this erroneous and arbitrary basis.

**{18}** We discern that the decisive issue with regard to Dr. Palmer's capacity to provide expertise here turns on his experience or education with regard to administering Tamiflu, a newer drug used in the treatment of influenza. As well, we recognize that we could affirm the district court's exclusion of Dr. Palmer's testimony if the court correctly determined that he lacked the qualifications to offer opinions on the appropriate use of Tamiflu. *Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 (explaining that appellate courts may affirm a district court's decision if it is right for any reason, so long as doing so would not be unfair to the appellant). However, Dr. Palmer's Special Affidavit asserted that he had considerable experience in prescribing Tamiflu and in observing its effects on influenza. While Defendants moved to strike the Special Affidavit on various grounds, the district court never ruled on those motions. Consequently, the Special Affidavit was part of the record upon which the district court based its determination to exclude Dr. Palmer's testimony, and the district court's exclusion was therefore equally improper in light of the Special Affidavit.

**{19}** Defendants suggest that we can determine whether the Special Affidavit was properly before the district court, but we decline that invitation. It is for the district court in the first instance to rule on motions and, if it has not done so, there is no ruling for us to review. We express no opinion about how the district court should rule on Defendants' motions to strike. On remand, the district court may resolve the still-pending motions to strike, and the parties may renew or submit any motions, evidentiary or otherwise, they deem to be appropriate in

light of that or our ruling. We therefore reverse and remand because, given the record before it, including the Special Affidavit, the district court abused its discretion in excluding Dr. Palmer's testimony.

## B. Summary Judgment Was Improper

**{20}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**{21}** The district court based its order of summary judgment entirely on its exclusion of Dr. Palmer, stating that "Plaintiffs do not have competent, admissible expert testimony to support the elements of duty and negligence [and proximate cause.]" Since we hold that the district court abused its discretion in excluding Dr. Palmer, Plaintiffs may now have the ability to prove those elements of their claim. As such, we reverse the district court's order of summary judgment.

## III. CONCLUSION

**{22}** For the reasons stated above, we conclude that the district court erred in excluding Dr. Palmer's testimony. We reverse the court's order excluding Dr. Palmer and its order of summary judgment and remand the case to the district court. As our holding is dispositive, we do not address Plaintiffs' other arguments on appeal.

**{23} IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**CYNTHIA A. FRY, Judge**

8

**Topic Index for *Holzem v. Presbyterian Healthcare Servs.*, No. 30,294**

**CIVIL PROCEDURE**
Affidavits
Deposition
Expert Witnesses
Summary judgment

**EVIDENCE**
Expert Witness
Scientific Evidence & *Daubert* Standard

**JUDGES**
Abuse of Discretion

**NEGLIGENCE**
Respondeat Superior
Wrongful Death

**TORTS**
Medical Malpractice
Wrongful Death