**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2017-NMCA-013

Filing Date: October 26, 2016

Docket No. 34,195

IN RE: THE PETITION OF PETER J. HOLZEM,
PERSONAL REPRESENTATIVE FOR THE
WRONGFUL DEATH ESTATE OF DOUGLAS
R. REID, DECEASED,

and

PETER J. HOLZEM, PERSONAL REPRESENTATIVE
FOR THE WRONGFUL DEATH ESTATE OF
DOUGLAS R. REID, DECEASED and CHRISTAL
REID, individually and as Guardian and next friend
of DARIAN REID, a Minor,

       Plaintiffs-Appellants,

v.

PRESBYTERIAN HEALTHCARE SERVICES
and JOSEPH HELAK, D.O.,

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
Sheri A. Raphaelson, District Judge

John R. Polk
David A. Archuleta
Albuquerque, NM

for Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
W. Mark Mowery
Albuquerque, NM

1

for Appellees

**OPINION**

**ZAMORA, Judge.**

**{1}** Peter Holzem, the personal representative of Douglas Reid's estate, and Christal Reid, Douglas Reid's wife (Plaintiffs), appeal an award of summary judgment in favor of Presbyterian Healthcare Services and Dr. Joseph Helak (Defendants). This is the second time this case is before us on appeal. *See Holzem v. Presbyterian Healthcare Servs. (Holzem I)*, 2013-NMCA-100, 311 P.3d 1198. In the first appeal, we held that the district court erred by excluding the opinion testimony of Plaintiffs' only proposed expert witness, and we reversed the district court's order granting summary judgment in favor of Defendants, which was based entirely on the exclusion of Plaintiffs' expert witness. *Id.* ¶¶ 19, 21-22. Upon remand, the district court excluded Plaintiffs' expert witness and granted summary judgment in favor of Defendants a second time.

**{2}** In this second appeal, Plaintiffs contend that the district court misconstrued and misapplied our decision in *Holzem I*, and they challenge the exclusion of their expert witness and the resulting summary judgment in favor of Defendants. We affirm in part and reverse in part.

**I.       BACKGROUND**

**{3}** We briefly review the facts that gave rise to the original controversy, which are set forth in detail in *Holzem I*. Plaintiffs' wrongful death action is based on allegations of medical malpractice following the death of Douglas Reid from influenza-related complications. Plaintiffs alleged that Defendants negligently failed to diagnose and treat Mr. Reid's influenza and that Mr. Reid's death could have been prevented, had he been properly diagnosed and treated with the antiviral drug Tamiflu when he was seen in the emergency room.

**{4}** In his January 8, 2009 deposition, Plaintiffs' medical expert witness, Darwin Palmer M.D., proposed that he was qualified to testify on this topic because he was an infectious disease specialist who taught about and specialized in treating infectious diseases for twenty-nine years at the University of New Mexico School of Medicine. However, Dr. Palmer also stated that: (1) he had not practiced emergency medicine for nearly fifty years; (2) he had never specialized in emergency medicine; (3) he retired in 1995—approximately four years before Tamiflu was available for prescription; (4) he had not reviewed any literature regarding Tamiflu in preparation for his deposition; and (5) he did not plan to refer to medical research, literature, or studies of any kind when he testified at trial. Plaintiffs attempted to amend Dr. Palmer's deposition testimony by submitting a six-page witness correction sheet dated February 20, 2009, and signed by Dr. Palmer; however, Defendants filed a motion to strike the document from the record. The district court granted Defendants'

motion.

**{5}** After extensive discovery, Defendants sought summary judgment and exclusion of Dr. Palmer's opinion testimony. Attached to Plaintiffs' response to Defendants' motion for summary judgment, Plaintiffs submitted two supplementary affidavits from Dr. Palmer. In the first affidavit, dated May 28, 2009 and June 12, 2009, Dr. Palmer attested to his qualifications and opinion about causation in Reid's case.[1] In the second affidavit, labeled "Special Affidavit" and dated June 12, 2009, Dr. Palmer provided new information about his post-retirement medical practice, stating that between 1998 and 2002 he treated "hundreds, if not thousands, of [influenza] patients," and "was able to carefully observe Tamiflu's effectiveness based on the time of its administration from the onset of symptoms."

**{6}** Defendants moved to strike both affidavits. The motions were not resolved prior to the first appeal. Nonetheless, the district court excluded the testimony of Dr. Palmer, concluding that he was not "qualified to render opinions o[n] the standard of care in the field of emergency medicine, including diagnosis and treatment" and granted summary judgment in favor of Defendants. Plaintiffs appealed.

**{7}** In the first appeal, this Court determined that the general issue in dispute was the standard of care for treating influenza, and that Dr. Palmer's capacity to provide expertise turned on his experience or education with regard to administering Tamiflu. *Holzem I*, 2013-NMCA-100, ¶¶ 17, 18. The district court's decision to exclude Dr. Palmer's opinion testimony was based on his lack of specialization in emergency medicine, and did not address whether he was qualified to testify about the standard practice for administering Tamiflu. *Id.* ¶¶ 12, 16. We concluded that the district court abused its discretion by excluding Dr. Palmer's testimony on the narrow basis of his background in emergency medicine, especially in light of evidence indicating that Dr. Palmer was an infectious disease specialist who taught about and treated infectious diseases, including influenza, for twenty-nine years. *Id.* ¶ 17.

**{8}** We also noted that the district court had not ruled on Defendants' motions to exclude Dr. Palmer's post-deposition affidavits, but did not appear to have considered them as evidence of his qualifications either. *Id.* Because the district court's order granting summary judgment was based entirely on the improper exclusion of Dr. Palmer, it was reversed. *Id.* ¶¶ 17-18. We instructed that "[o]n remand, the district court may resolve the still-pending motions to strike, and the parties may renew or submit any motions, evidentiary or otherwise, they deem to be appropriate in light of that or our ruling." *Id.* ¶ 19. The mandate to reopen the case was filed on February 5, 2014.

---

[1]The verification page for the affidavit attached to Plaintiffs' response to Defendants' motion for summary judgment was dated June 12, 2009, and the verification page for the affidavit attached to Plaintiffs' memorandum in support of their motion for summary judgment was dated May 29, 2009. Otherwise, the bodies of the affidavits are identical.

**{9}** While the first appeal was pending, Plaintiffs learned that Dr. Palmer was diagnosed with Alzheimer's disease (Alzheimer's), and was no longer able to testify or to consult on the case. Plaintiffs moved to modify the pretrial order to allow a new expert witness. Plaintiffs provided the district court with documentation in support of their motion, including letters of conservatorship and guardianship for Dr. Palmer, issued on September 28, 2009, and an affidavit of Plaintiffs' counsel concerning his knowledge of Dr. Palmer's condition and Dr. Palmer's inability to testify. Plaintiffs requested that they be allowed to replace Dr. Palmer with a new expert witness who had reviewed the relevant medical records and testimony and was fully prepared to testify. Plaintiffs provided the new expert's curriculum vitae as well as his analysis and conclusions concerning the case.

**{10}** Defendants renewed their motion for summary judgment and argued that the district court was required to rule on the pending motions to strike Dr. Palmer's affidavits and the summary judgment motion before considering Plaintiffs' request to add the new expert. The district court agreed, concluding that the instructions on remand required the court to "go back in time" and rule on the renewed motions based on the information available at the time the motions were initially filed. The district court entered a minute order stating that Plaintiffs' motion concerning the new expert was premature and continued the motion until after summary judgment was decided. Plaintiffs moved to modify or vacate that minute order. The district court denied the motion, but invited Plaintiffs to file a supplemental response to Defendants' summary judgment motion. Plaintiffs subsequently filed their supplemental response attaching the documentation related to Dr. Palmer's condition as well as the qualifications and evaluation of their new proposed expert.

**{11}** Without addressing Dr. Palmer's inability to testify or Plaintiffs' request to add a new expert, the district court entered an "amended corrected" order excluding Dr. Palmer's opinion testimony; an order granting Defendants' motion to strike Dr. Palmer's affidavit; an order granting Defendants' motion to strike the "Special Affidavit" of Dr. Darwin Palmer and Dr. Palmer's statement of "Revised Opinions"; and an order granting summary judgment in favor of Defendants. This appeal followed.

## II. DISCUSSION

**{12}** Plaintiffs raise five issues on appeal concerning: (1) the exclusion of Dr. Palmer's opinion testimony, (2) the exclusion of Dr. Palmer's post-deposition affidavits, (3) the denial of supplemental discovery with Dr. Palmer's videotaped trial deposition, (4) summary judgment in favor of Defendants, and (5) judicial bias.

### A. The Exclusion of Dr. Palmer's Opinion Testimony

**{13}** "The testimony of a medical expert is generally required when a physician's standard of care is being challenged in a medical negligence case." *Lopez v. Reddy*, 2005-NMCA-054, ¶ 9, 137 N.M. 554, 113 P.3d 377. The admission or exclusion of a medical expert's testimony is governed by Rule 11-702 NMRA, which provides that "[a] witness who is

4

qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

**{14}**    "In determining whether an expert witness is competent or qualified to testify, the [district] court has wide discretion, and the court's determination of this question will not be disturbed on appeal, unless there has been an abuse of this discretion." *Lopez*, 2005-NMCA-054, ¶ 14 (alterations, internal quotation marks, and citation omitted). In other words, we will not disturb the trial court's ruling "unless it is manifestly wrong or the trial court has applied wrong legal standards in the determination." *Id.* (alteration, internal quotation marks, and citation omitted).

**{15}**    In *Holzem I*, we held that the district court's exclusion of Dr. Palmer's opinion testimony based on his lack of specialization in emergency room medicine was erroneous, arbitrary, and was not supported by the record. *Holzem I*, 2013-NMCA-100, ¶ 17 ("Evidence indicates that Dr. Palmer was an infectious disease specialist who taught about and specialized in treating infectious diseases for twenty-nine years at the University of New Mexico Medical School. The courses he taught to medical students included instruction on the diagnosis and treatment of influenza. Not as a specialist in emergency medicine but as a specialist in infectious disease, Dr. Palmer's background afforded him experience and expertise in diagnosing and treating influenza. The standard for diagnosing and treating influenza is not particular to emergency medicine, and cannot be construed on such a narrow basis.").

**{16}**    On remand, the district court entered an "amended corrected order" excluding Dr. Palmer's opinion testimony as to causation, purportedly for purposes of clarifying its pre-*Holzem I* order excluding the opinion testimony of Dr. Palmer entered on December 28, 2009. The amended corrected order does not modify or change the basis for excluding Dr. Palmer's testimony. The order provides for only one modification, stating: "[t]he [o]rder [e]xcluding the [o]pinion [t]estimony of [Dr.] Palmer . . . filed on December 29, 2010[,] is amended to include the following additional sentence at the end of paragraph 10: *Dr. Palmer may not offer an expert medical opinion as to causation.*"

**{17}**    The court's amended corrected order does not modify the basis for excluding Dr. Palmer's opinion testimony, nor does it address whether Dr. Palmer's education and experience would qualify him to provide expertise with regard to Tamiflu. *See Holzem I*, 2013-NMCA-100 ¶¶ 15, 17 (noting that "a non-specialist can testify as to the standards of care owed by a defendant specialist, but only if the non-specialist is qualified and competent to do so. The mere fact that a medical witness is not a specialist goes to the weight, not to admissibility, of the witness's expert testimony[,]" and holding that "Dr. Palmer's lack of specialization in emergency medicine does not automatically disqualify him as an expert witness. Rather, it goes to the weight a jury could give his testimony if determined otherwise to be admissible" (alterations, internal quotation marks, and citation omitted)).

5

**{18}** Defendants argue that the district court, sua sponte, on June 30, 2014, entered the amended corrected version of its pre-appeal order excluding Dr. Palmer's opinions for purposes of clarifying its February 2, 2010, oral ruling. Because Plaintiffs did not provide this Court with an adequate record to review this amended corrected order, Defendants ask us to apply the presumption of correctness. What is bothersome about this argument is that the order before the *Holzem I* court did not include this language added to paragraph 10 and therefore was not a consideration by any of the parties and more importantly this Court. To the extent there are discrepancies between the December 28, 2009 order, the district court's oral clarification, and the amended corrected June 30, 2014 order, the original written order prevails and we need not consider either the oral clarification or the post-appeal written order. *See State v. Lohberger*, 2008-NMSC-033, ¶ 20, 144 N.M. 297, 187 P.3d 162 ("Informal expressions of a court's rulings are not appealable final orders or judgments. [A] trial court's oral announcement of a result is not final, and parties to the case should have no reasonable expectation of its finality."); *Bouldin v. Bruce M. Bernard, Inc.*, 1967-NMSC-155, ¶ 3, 78 N.M. 188, 429 P.2d 647 ("[A]n oral ruling by the trial judge is not a final judgment. It is merely evidence of what the court had decided to do—a decision that the trial court can change at any time before the entry of a final judgment.").

**{19}** At the time of *Holzem I*, the December 28, 2009 order was what was before this Court. At that time, this Court had no reason to review whether Dr. Palmer could offer an expert opinion on causation. Defendants argue that nevertheless, the record of the February 2, 2010 hearing was before the *Holzem I* court, implying that this Court should have known the district court failed to include language in its order. This Court is not required to search the record to find error to reverse the district court, especially where the error was not raised by either party. *State v. Weber*, 1966-NMSC-164, ¶ 37, 76 N.M. 636, 417 P.2d 444.

**{20}** We conclude that the district court's continued reliance on Dr. Palmer's lack of specialization in emergency medicine as the basis for exclusion, despite our express rejection of that rationale in *Holzem I*, is an abuse of discretion. *See* 2013-NMCA-100, ¶ 17.

**B.     The Order Excluding Dr. Palmer's Videotaped Trial Deposition Is the Law of the Case**

**{21}** Plaintiffs initially sought to take a videotaped trial deposition of Dr. Palmer directly after the discovery deposition was taken in January 2009. Defendants objected and the district court ordered that there be "a reasonable opportunity and period of time to prepare cross-examination for any subsequent videotaped trial deposition." On August 13, 2009, Plaintiffs filed a notice that the videotaped trial deposition of Dr. Palmer would take place on August 26, 2009. Defendants moved for a protective order and filed a notice of non-appearance for the deposition. The deposition took place before the district court ruled on the motion for protective order.

**{22}** Plaintiffs moved to supplement discovery with the videotaped trial deposition testimony. The district court denied the motion since the deposition was taken approximately

6

three months after the close of discovery. The order, which preceded Plaintiffs' first notice of appeal, was not challenged in that appeal. Accordingly, we conclude that the law of the case doctrine applies and we decline to review the order now. *See Varney v. Taylor*, 1968-NMSC-189, ¶ 4, 79 N.M. 652, 448 P.2d 164 ("We have also held that the law of the case doctrine applies not only to questions which are expressly or by necessary implication raised and ruled upon in the prior appeal, but also to questions which might have been but were not raised or presented."); *State v. Brown*, 2003-NMCA-110, ¶ 8, 134 N.M. 356, 76 P.3d 1113 ("Under the doctrine of law of the case, this Court will not now review issues that [the d]efendant could have but did not raise in his first appeal.").

**C.     Defendants' Motions to Strike Dr. Palmer's Post-Deposition Affidavits and Summary Judgment**

**{23}**     In *Holzem I*, we held that summary judgment, based entirely on the exclusion of Dr. Palmer was improper, partially because the district court had not ruled on Defendants' motions to strike Dr. Palmer's post-deposition affidavits. *Id.* ¶ 21. The affidavits created a factual issue with regard to Dr. Palmer's qualifications and his capacity to provide expertise concerning the administration of Tamiflu. *Id.* ¶ 18. We concluded that with the affidavits in the record, the record did not support the exclusion of Dr. Palmer's opinion testimony or summary judgment. *Id.* ¶¶ 18, 21.

**{24}**     One month after the mandate was issued, Plaintiffs filed a motion to modify the pretrial order to allow for a new expert witness to be substituted for Dr Palmer. Plaintiffs' counsel then filed an affidavit informing the district court that he had recently learned Dr. Palmer was suffering from Alzheimer's and that Dr. Palmer was not able to testify or consult with Plaintiffs in this case.[2] As a result, Plaintiffs' counsel had retained an expert to substitute for Dr. Palmer. Defendants opposed the motion to modify the pretrial order.

**{25}**     On remand, Defendants argued that Plaintiffs' motion was premature and that the district court was required to rule on the pending motions to strike Plaintiffs' affidavits and summary judgment before considering the motion to modify the pretrial order. The district court agreed and stated: "I think the Court of Appeals wants me to go back in time to when the motion for summary judgment was filed and just review everything that would have been available at that time." Based on this interpretation, the court granted Defendants' motions to strike Dr. Palmer's affidavits, apprarently without considering Plaintiffs' supplemental response to Defendants' motion for summary judgment that the court invited Plaintiffs to submit, and Plaintiffs' motion to add a new expert.

---

[2]Plaintiffs' motion, memorandum in support, and supporting affidavit request that their new medical expert witness be added, included, and/or permitted to replace Dr. Palmer. Given the circumstances underlying their motion, we consider Plaintiffs' motion a request to replace Dr. Palmer.

**{26}** On appeal, Defendants continue to argue that because *Holzem I* identified Dr. Palmer's capacity to provide expertise based on his education and experience regarding Tamiflu as the "decisive issue" in this case, it was appropriate for the district court to decide summary judgment based on that issue alone before considering Plaintiffs' motion for a new expert. We disagree.

**{27}** There is nothing in the language of *Holzem I* that indicates we intended to limit the district court's consideration of summary judgment to the record as it stood when Defendants' motion for summary judgment was initially filed. Our instructions on remand were:

> [T]he district court may resolve the still-pending motions to strike, and the parties may renew or submit any motions, evidentiary or otherwise, they deem to be appropriate in light of that or our ruling. . . . Plaintiffs may now have the ability to prove those elements of their claim.

*Holzem I*, 2013-NMCA-100, ¶¶ 19, 21. By inviting Plaintiffs to file a supplemental response to Defendants' motion for summary judgment, the district court appears to have considered the intended application of the remand instructions. Defendants concede that Plaintiffs' motion for an additional expert "was permissible under the broad language of *Holzem I*."

**{28}** As Defendants point out, our decision in *Holzem I* did not address the specific circumstances presented by Dr. Palmer's disability upon remand. And in light of the changed circumstances, Dr. Palmer's capacity to testify was no longer the decisive issue. However now, Dr. Palmer's ability to testify at all has become an issue. The broad language in *Holzem I* cannot be read to preclude the district court from considering significant changes in the parties' circumstances when determining whether summary judgment was appropriate.

**{29}** New Mexico courts are cautious in granting summary judgment. *Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 16, 363 P.3d 1197 ("[S]ummary judgment is a drastic remedy to be used with great caution." (internal quotation marks and citation omitted)); *see* Rule 1-056(F) NMRA ("Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his position, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.").

**{30}** While the form and substance of the district court's orders were sloppy and unconventional, the controversy surrounding the affidavits has become irrelevant. Circumstances have simply changed. There is no preserved testimony from Dr. Palmer which could be presented at any future trial. Given the new circumstances Plaintiffs' case is now entirely dependent on their new proposed expert. Dr. Palmer and all of the issues surrounding his expertise and potential testimony have become mere historical artifact. As such, there is no need to address the propriety of his affidavits substantively because they

8

will play no role in the case as it proceeds. Accordingly, we conclude that the district court erred in granting summary judgment.

**D.      Judicial Bias**

**{31}**    To the extent that Plaintiffs argue that the district court demonstrated bias against them, we note that Plaintiffs rely on the court's adverse rulings to support their claim. Adverse rulings alone are not sufficient to demonstrate judicial bias. *See State v. Hernandez*, 1993-NMSC-007, ¶ 44, 115 N.M. 6, 846 P.2d 312 ("[B]ias cannot be inferred from an adverse ruling[.]"); *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 425, 96 N.M. 155, 629 P.2d 231 ("Rulings adverse to a party do not necessarily evince a personal bias or prejudice on the part of the judge[.]").

**CONCLUSION**

**{32}**    For the reasons stated above, we affirm the district court's exclusion of Dr. Palmer's videotaped deposition and reverse the district court's order granting Defendants' summary judgment and remand the case to the district court. Upon remand, the district court is to allow Defendants to engage in discovery limited to Plaintiffs' new expert witness in order to obtain the fullest possible knowledge of his qualifications and proposed opinions. The parties may then proceed with litigation accordingly.

**{33}      IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**RODERICK T. KENNEDY, Judge**